**Elzbieta KLAWITTER, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

**No. 91–4035.**

United States Court of Appeals,
Sixth Circuit.

Submitted June 11, 1992.

Decided June 29, 1992 *.

---

* This decision was originally issued as an "unpublished decision" filed on June 29, 1992. On July 16, 1992, the court designated the opinion as one recommended for full-text publication.

Fakhri W. Yono, Yono & Sarafa, Farmington Hills, Mich. (briefed), for petitioner.

Nicholas J. Pantel, Asst. U.S. Atty., D. Michael Crites, U.S. Atty., Office of U.S. Atty., Cincinnati, Ohio, Robert Kendall, Jr., David J. Kline, U.S. Dept. of Justice, Civ. Div., David M. McConnell (briefed), Office of Immigration Litigation, Washington, D.C., for respondent.

Before: KEITH and SUHRHEINRICH, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner, Elzbieta Klawitter, appeals an order of the Board of Immigration Appeals ("BIA" or "Board") of respondent, the Immigration and Naturalization Service, denying her request for asylum under 8 U.S.C. § 1101(a)(42).

## I.

Respondent is a 45–year–old female, who is a native and citizen of Poland. She entered the United States at Detroit, Michigan, on July 23, 1988 when she was admitted as a nonimmigrant visitor for pleasure authorized to remain here until January 22, 1989. Petitioner remained in the United States for a longer time than authorized and deportation proceedings were initiated against her on February 16, 1990, with the issuance of an order to show cause.

At a deportation hearing before an Immigration Judge ("IJ"), petitioner conceded her deportability, but requested the opportunity to file an application for asylum before the IJ. In her asylum application, she alleged that in 1986 after returning to Poland from the United States after a five month visit, she was called many times to appear before the secret police and was interrogated and threatened by them. She also alleged that she was blacklisted for her refusal to become a member of the communist party and her career as a musician was thereafter thwarted.

A deportation hearing was scheduled for October 23, 1990. Petitioner appeared and testified in support of her asylum claim. She testified that she had been persecuted in Poland by a man who was interested in her sexually after she refused to become his paramour. Petitioner based her claim of asylum on her fear of this individual,

who was named Josef Niedzwiecki, a colonel in the Polish secret police. She alleged that he forced himself on her and used violence against her while threatening to destroy her career. In support of her claim, she furnished a certified copy of a letter dated August 2, 1990, from a friend in Poland, informing her that, while major changes had occurred in Poland, Josef Niedzwiecki was still chief of security and internal affairs.

The immigration judge denied petitioner's request for asylum, concluding that her testimony was "self-serving" and "uncorroborated" and that her claim lacked credibility. Alternatively, he found that assuming the allegations in her claim to be true, the actions to which she was subject in Poland did not constitute persecution within the meaning of the Immigration and Nationality Act ("INA"), which allows asylum to be granted to a refugee who has a well-founded fear of persecution because of race, religion, membership in a particular social group, or political beliefs. The IJ found petitioner to be deportable and denied her application for asylum and withholding of deportation. The IJ granted petitioner the privilege of voluntary departure. Petitioner appealed the IJ's decision to the Board of Immigration Appeals.

On October 7, 1991, the Board of Immigration Appeals issued an order dismissing the appeal for asylum, but granting voluntary departure. The Board found that the IJ gave insufficient reasons for his credibility determination, but found that the IJ had correctly determined that under the Act petitioner had failed to sustain her burden of proof that she was statutorily eligible for asylum because she was a victim of past persecution due to her race, religion, nationality, membership in a particular social group, or political opinion. Petitioner timely filed this appeal, challenging only that portion of the IJ's decision denying her request for asylum and withholding of deportation.

## II.

We must determine whether the Board correctly determined that petitioner failed to sustain her burden of proof that she has a well-founded fear of persecution under the Act.

█ Under section 208(a) of the INA, 8 U.S.C. § 1158(a), the Attorney General has the discretion to grant asylum to "refugees." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 1211 n. 5, 94 L.Ed.2d 434 (1987). A "refugee" is defined as a person unable to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An asylum determination involves two steps. First, the alien must show statutory eligibility for asylum by establishing a "well-founded fear of persecution." Second, if the alien shows statutory eligibility, the alien must show that the Immigration Judge should exercise discretion to grant asylum. *See Rodriquez–Rivera v. INS*, 848 F.2d 998, 1001 (9th Cir.1988). The alien has the burden of proof at both stages. *See* 8 C.F.R. §§ 208.5, 242.17(c); *Gumbol v. INS*, 815 F.2d 406, 408 (6th Cir.1987).

An application for asylum is also considered to be a request for withholding of deportation, which is governed by 8 U.S.C. § 1253(h)(1). Withholding of deportation is mandatory if an "alien's life or freedom would be threatened [in the country of deportation] on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.*

█ In reviewing the factual determinations of the Board regarding an alien's eligibility for asylum and withholding of deportation, this court must apply the substantial evidence standard of review. "All the substantial evidence standard requires is that the BIA's conclusion, based on the evidence presented, be substantially reasonable." *Diaz–Escobar v. INS*, 782 F.2d 1488, 1493 (9th Cir.1986). Substantial evidence is thus a deferential standard which "plainly does not entitle a reviewing court to reverse ... simply because it is convinced that it would have decided the case

differently." *DiCicco v. INS*, 873 F.2d 910, 912 (6th Cir.1989), *quoting Anderson v. Bessemer City*, 470 U.S. 564, 573–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *see also De Valle v. INS*, 901 F.2d 787, 790 (9th Cir.1990), *quoting Diaz–Escobar v. INS*, 782 F.2d at 1493 ("we may not reverse the BIA simply because we disagree with its evaluation of the facts...."). Rather, in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed *compels* it. *INS v. Elias–Zacarias*, —— U.S. ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). According to the Supreme Court, the Board's determination that an alien is not eligible for asylum must be upheld unless the alien shows that the evidence he or she presented was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* —— U.S. at ——, 112 S.Ct. at 814.

In the present case, the Board concluded that petitioner did not show statutory eligibility for asylum, stating:

It is evident on this record that it was Josef Niedzwiecki's personal interest in the respondent rather than any interest on his part to "persecute" her which explains why he persistently sought her out. Indeed, the respondent herself admitted that he not only found her attractive, but also wanted her to become his paramour. While he may have threatened and harmed her on occasion, as she claims, it is clear that he was not "persecuting" her on account of a proscribed ground. On the contrary, he simply was reacting to her repeated refusals to become intimate with him. However distasteful his apparent treatment of the respondent may have been, such harm or threats arising from a personal dispute of this nature, even one taking place with an individual in a high governmental position, is not a ground for asylum. Likewise, absent any showing of an underlying persecutory intent or that she was effectively precluded from any substantial employment or the means of obtaining the basic necessities of life, the respondent's alleged inability to advance professionally in Poland, even if it was a result of Mr. Niedzwiecki's influence or her failure to join the Communist party, does not constitute persecution under the Act. It stands to reason, therefore, that her fears of not being able to find suitable employment in Poland, or of being harassed and harmed by Josef Niedzwiecki upon her return, while no doubt genuine, are not fears of persecution which could render her eligible for asylum relief.

Joint Appendix at pp. 4, 5 (citations omitted).

■ We agree with this conclusion. Petitioner's own testimony refutes her contention that she is entitled to asylum under the statute because she merely alleges that she was "persecuted" by a man who was interested in her sexually. She even concedes that "my personal issue does not have anything to do with the government or change of government." Even though she stated that she was a member of Solidarity, she stated that she had a position of no importance and does not suggest that the "persecution" she endured from this man was based on her political beliefs. It is clear that the basis of petitioner's asylum claim is her fear of continued pressure by a government official in Poland to succumb to his sexual advances. We agree with the Board that although petitioner's testimony recounts an unfortunate situation, harm or threats of harm based solely on sexual attraction do not constitute "persecution" under the Act. Even if petitioner's allegations are true, they do not come within the scope of the statute. Congress did not contemplate that a claim of sexual harassment would constitute the type of persecution for which political asylum would be granted. An applicant for political asylum in the United States must demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Petitioner's fear was not on account of her race, religion, nationality, membership in a particular social group, or political beliefs. The Board

thus properly rejected Ms. Klawitter's asylum claim based upon the alleged harm she endured at the hands of Josef Niedzwiecki.

■ The Board also concluded that petitioner's more general assertions of harm at the hands of the police do not support an entitlement to asylum. The Board stated in this regard:

In a related matter, we note that, apart from her claim of harm by Josef Niedzwiecki, the respondent also is contending to have been questioned, detained for 24 hours, and physically abused by other members of the Polish Secret police. We note, however, the respondent provided no testimony whatsoever detailing the circumstances surrounding these claimed incidents. For example, it is unclear when, in what context, and, more importantly, why, such incidents occurred. It is equally unclear what she was asked, but refused, to do for the secret police which prompted them to take such actions against her. We note that when asked at the hearing to explain what exactly she had been subjected to by members of the secret police (other than Mr. Niedzwiecki), the respondent replied that friends of Mr. Niedzwiecki would accompany him to her house drunk. Such actions, however, do not constitute persecution, and such testimony, without more, does not establish the respondent's claim under section 208 of the Act. Indeed, in the absence of sufficiently detailed testimony which provides a plausible and coherent account of these alleged incidents, as in this case, we are unable to conclude that there exists a persecutory intent underlying these claimed incidents with which to grant asylum relief. Furthermore, we note the Ministry of Internal Affairs, which oversees the security apparatus of the Polish government, recently underwent profound reform, including the 1990 abolition of the secret police force.

Joint Appendix at p. 5 (citation omitted).

We agree with this conclusion. The "well-founded fear of persecution" standard for asylum requires "a showing by credible, direct, and specific evidence ... of facts that would support a *reasonable* fear that the petitioner faces persecution." *Rodriquez–Rivera v. INS*, 848 F.2d at 1002. *See also De Valle v. INS*, 901 F.2d 787, 791 (9th Cir.1990); *Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1579 (9th Cir.1986). The only testimony during the hearing provided by petitioner that even remotely suggests harassment at the hands of the secret police is that on occasion "friends" of Josef Niedzwiecki would accompany him to her house while they were drunk. Clearly, this is not the type of "credible, direct, and specific evidence ... of facts that would support a *reasonable* fear that the petitioner faces persecution" by the secret police upon her return to Poland. *Rodriquez–Rivera v. INS*, 848 F.2d at 1002.

■ We also believe the Board properly determined that petitioner has not established entitlement to a grant of asylum based on humanitarian grounds because of the severity of her past persecution. The Board held in *Matter of Chen*, Int.Dec. 3104 (BIA 1989) that even where there is no reasonable likelihood of future persecution, asylum should be granted if the past persecution was so severe that returning the alien to his or her native country would be inhumane. *Matter of Chen*, Int.Dec. 3104, at 4. We agree with the Board that although cases may arise like *Chen*, in which the past persecution suffered by an alien warrants granting asylum to the alien for humanitarian reasons, the present case is not one of them. The testimony related by petitioner, even if one accepts it as true, simply does not include an account of egregious persecution like that suffered by Chen and his family in China. Because the humanitarian considerations which were present in *Chen* are lacking in the present case, the Board properly concluded that the record does not compel a grant of asylum to petitioner. *See Gutierrez–Rogue v. INS*, 954 F.2d 769, 772 (D.C.Cir.1992) (comparing facts of that case to *Chen* and concluding that the Board did not abuse its discretion in denying asylum because the "harassment that Gutierrez suffered, although no doubt very frightening, was not nearly so severe"). Furthermore, the asy-

lum applicant in *Chen* proved the merit of his case through cogent "detailed" testimony and "lengthy" documentation of egregious and sustained past persecution. *Matter of Chen*, Int.Dec. 3104 at 5, 10. By contrast, petitioner's testimony was found by the Board to be completely insufficient to support her claims of past persecution. Absent documentary evidence, an asylum applicant's testimony regarding a claim of past persecution will suffice only if "it is credible, persuasive, and refers to 'specific facts that give rise to an inference'" that the applicant has been singled out for persecution on account of a qualifying ground under section 208(a) of the Act. *Blanco–Comarribas v. INS*, 830 F.2d 1039, 1042–43 (9th Cir.1987). In the present case, petitioner has failed to provide such facts.

To conclude, in regard to the claim of persecution by Josef Niedzwiecki, petitioner fails to provide a qualifying ground under section 208(a) of the Act. In regard to the claim of general persecution by the secret police, petitioner's testimony contains no specific account of harassment other than by that of Josef Niedzwiecki and drunk friends. Petitioner has thus failed to provide specific facts to back up the allegations in her written request for asylum that she has been persecuted by the secret police because of race, religion, nationality, membership in a particular group, or political beliefs.

For these reasons, the Board is hereby AFFIRMED.