996 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tomasz CYTACKI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-3717.
 United States Court of Appeals, Sixth Circuit.
 June 18, 1993.
 
 Before GUY and SUHRHEINRICH, Circuit Judges, and DOWD, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from the Board of Immigration Appeals decision denying Tomasz Cytacki's request for asylum. We find that there is substantial evidence to support the Board's decision and therefore affirm.
 
 I.
 
 2
 Cytacki is a 34-year old native of Poland who came to the United States in May 1986 as a visitor for pleasure authorized to stay until November 1986. One month after Cytacki arrived in this country, a friend who had just returned from a visit to Poland relayed a warning from Cytacki's parents that Cytacki should not return to Poland. Following this warning, Cytacki filed an application for asylum in August 1986. The Immigration and Naturalization Service denied that application in December 1987. Cytacki then filed a motion to reconsider the denial of his asylum application, which was denied. Deportation proceedings began and, in March 1989, Cytacki was served with an order to show cause why he should not be deported. Cytacki then renewed his request for asylum in August 1989. In April 1990, a hearing was held before an immigration judge at which time Cytacki conceded deportability under 8 U.S.C. § 1251(a)(2) as an overstay, but presented testimony and other evidence to support his application for asylum. At the conclusion of the hearing, the immigration judge issued an oral ruling denying Cytacki's request for asylum.
 
 
 3
 The facts that Cytacki presented to establish a well-founded fear of persecution are as follows. Cytacki was born and educated in Warsaw, Poland, attending the University of Warsaw for one year and then the College of Electrical Engineering at the Technical University of Warsaw. After graduation, Cytacki worked as a research scientist at the Institute of Power in Warsaw. Cytacki was a member of various anti-Communist student organizations and participated in the distribution of an underground press on behalf of the Solidarity movement, at one point harboring a typing machine, which was a felony. He also participated in various anti-Communist demonstrations during the period of Polish martial law. Cytacki testified to having received individualized attention from law enforcement authorities only twice. Both incidents occurred prior to his political activities. Both times the officials requested that Cytacki "spy" on his friends and report their activities. Cytacki refused to comply. In addition, several times Cytacki was approached and urged to join the Communist Party. Each time he declined.
 
 
 4
 After Cytacki's arrival in the United States he joined POMOST, a social political organization which believes in promoting the ideas of individualism, freedom and self-determination of nations and democracy throughout the world. Cytacki participated as a commentator for POMOST's Polish radio broadcasts twice a week on a local radio station in Pontiac, Michigan. Cytacki testified that POMOST was considered by the Communist regime in Poland to be "terroristical in nature," and that being a member was a felony. (App. 29.)
 
 
 5
 The immigration judge found that Cytacki's asserted fear of persecution was based on two distinct periods of political activity, that in Poland and that in the United States. As far as Cytacki's activities in Poland, the immigration judge found them unlikely to provoke persecution "[g]iven the fact that the Solidarity organization formally entered into the coalition government that is presently existing in Poland...." (App. 170.) Cytacki had argued that while Solidarity had entered into a coalition government, the Communists still controlled the political infrastructure of Poland. Concerning the second period of activity, that in the United States with the group POMOST, the judge found "no concrete evidence ... that, in fact, his membership in this organization is known by the Polish authorities." (App. 170-71.) Thus, the immigration judge found that Cytacki had not established a well-founded fear of persecution, and denied his request for asylum or withholding of deportation.
 
 
 6
 Cytacki appealed the immigration judge's denial of his request for asylum to the Board of Immigration Appeals. On June 25, 1992, the Board affirmed the decision of the immigration judge for the reasons he set forth in his oral ruling. The Board noted that
 
 
 7
 the then-recent political changes in Poland were addressed at the respondent's hearing, and the immigration judge's decision was based in no small part on the correct conclusion that the very changes the respondent has sought in Poland have largely been realized. The respondent's allegation that the communists still control the infrastructure in Poland is unavailing, given the collapse of communist domination since 1989. Furthermore, we take administrative notice of even more recent political developments which confirm that Poland has undergone sweeping political change toward democratization. On December 9, 1990, Lech Walesa, former chairman of Solidarity, was elected president of Poland with 74.7% of the vote in the first democratic presidential election in more than 60 years. On December 22, 1990, Lech Walesa was sworn in as President of Poland. Meanwhile, the Communist Party, which formerly exercised a virtual monopoly of political power in Poland, has lost its control of not only the Presidency, but also of both houses of the Polish Parliament, including all but one of the 60 seats in the upper house, or Senate. The heirs of the now disbanded Communist party have also been forced to submit to the process of free and democratic parliamentary elections, for the first time in Poland since the Second World War.
 
 
 8
 (App. 3-4; footnotes omitted.) Plaintiff has appealed the Board's decision.
 
 II.
 
 9
 To be eligible for asylum under 8 U.S.C. § 1158(a) a person most prove he is a refugee. A refugee is a person unable to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social groups, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). Cytacki argues that he has established a well-founded fear of persecution based on one of the listed categories. The determination of whether a person qualifies as a refugee has an objective "well-founded" component, and a subjective "fear" component. Kapcia v. INS, 944 F.2d 702, 706 (10th Cir.1991). "[T]he objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that petitioner faces persecution." Id. (citation omitted). This test has also been characterized as whether a reasonable person in the same circumstances would fear persecution. M.A. v. INS, 899 F.2d 304, 311 (4th Cir.1990). Only after the objective criterion is satisfied does a court examine the subjective element--whether the alien's fear is genuine. Kapcia 944 F.2d at 706. Once it is determined that a person qualifies as a refugee, it is still within the discretion of the Attorney General, delegated to the INS, 8 C.F.R. § 2.1, to decide whether to grant asylum. Klawitter v. INS, 970 F.2d 149, 1515 (6th Cir.1992). Throughout these determinations, the alien bears the burden of proof. 8 C.F.R. § 208.13, Klawitter, 970 F.2d at 151.
 
 
 10
 When an application for asylum has been filed after deportation proceedings have begun, that application is also treated as a request for a withholding of deportation under 8 U.S.C. § 1253(h)(1). Klawitter, 970 F.2d at 151. Unlike a request for asylum which is discretionary, a "[w]ithholding of deportation is mandatory if an 'alien's life or freedom would be threatened [in the country of deportation] on account of race, religion, nationality, membership in a particular social group, or political opinion.' " Id. (citation omitted). To be eligible for a withholding of deportation, "[t]he alien must demonstrate a 'clear probability of persecution' with 'objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation.' " Kapcia, 944 F.2d at 709 (citation omitted).
 
 
 11
 This court's review of the factual determinations made by the Board is pursuant to the deferential, substantial evidence standard of review. Klawitter, 970 F.2d at 151. Under this standard, the Board's decision will be upheld if, based on the evidence presented, it is substantially reasonable. Id. "[I]n order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed compels it. Id. at 152.
 
 
 12
 We believe that the Board's determination is supported by substantial evidence in the record. Even during the time Cytacki spent in Poland and was active in anti-Communist groups, he was never persecuted or even detained. Cytacki's parents also refused to join the Communist Party and were active in the Solidarity movement, yet they were never taken into custody or persecuted in other ways. As for Cytacki's activities in the United States, no "credible, direct, and specific evidence" was offered to show that POMOST members are persecuted upon return to Poland. One witness testified that he had heard of a POMOST member who visited Poland and was questioned by authorities but released. These events seemed to have occurred in the past. Even without considering the radical changes that have occurred in Poland since the time of Cytacki's hearing and the decision by the immigration judge, there was substantial evidence to support the Board's decision.
 
 
 13
 Having failed to establish the objective "well-founded" component, we need not consider Cytacki's subjective fears. Additionally, because substantial evidence supports the Board's determination that Cytacki did not establish a well-founded fear of persecution, it follows that Cytacki "also failed to establish the tougher standard of clear probability of persecution required for withholding of deportation." Kapcia v. INS, 944 F.2d at 709 (citation omitted).
 
 
 14
 Cytacki argues that the Board impermissibly based its decision solely on administratively noticed facts and that the Board failed to "engage in a careful, individualized review of the evidence presented in [his] application[ ] and hearing[ ]." Kaczmarczyk v. INS, 933 F.2d 588, 595 (7th Cir.), cert. denied, 112 S.Ct. 583 (1991). Cytacki argues that, at the very least, his case should be remanded for further proceedings. We disagree. The Board initially affirmed the immigration judge's denial of Cytacki's application for asylum for the reasons set forth in the judge's oral opinion. The immigration judge had cited the changing circumstances as one of the reasons for his determination that Cytacki had not shown a well-founded fear of persecution. At the hearing Cytacki offered evidence that, while Solidarity had entered into a coalition government, the Communists retained considerably more authority than Solidarity representatives and still controlled the political infrastructure. The Board merely found that the events that had occurred after the hearing confirmed the immigration judge's conclusion.
 
 
 15
 Oftentimes various delays in the field of immigration law work to the advantage of the alien. In the present action, the delay has worked against the alien's goal of staying in this country. In the seven years that Cytacki has been allowed to remain in the United States, events overseas have drastically reshaped the political realities of several of the former Communist countries, including Poland. This is not a case of a mere subtle change in attitudes, but a drastic change in Polish society. It would be against the notion of justice to not allow the Board of Immigration Appeals to take notice of such significant events. We agree with the Seventh Circuit that administrative notice in this context is proper.
 
 
 16
 In exercising official notice, administrative agencies may consider commonly acknowledged facts. See generally, 3 K. Davis, Administrative Law Treatise § 15 (1980). The Board's notice of current events bearing on an applicant's well-founded fear of persecution--in this case Solidarity's participation in the Polish government--falls within this accepted category.... We reiterate today that the BIA may take official notice of uncontroverted facts concerning political conditions in asylum seekers' home countries, including Solidarity's role in the Polish government.
 
 
 17
 Kaczmarczyk, 933 F.2d at 593-94. The Tenth Circuit has also agreed with this approach. Kapcia, 944 F.2d at 705 (collecting cases).
 
 
 18
 In summary, we find the Board's decision, even without considering the appropriately administratively noticed facts, is supported by substantial evidence. The conclusion that Cytacki has not established a well-founded fear of persecution is further supported by the changes in the political structure of Poland that have occurred after the immigration judge's decision. We therefore AFFIRM the decision of the Board of Immigration Appeals denying Cytacki's application for asylum or withholding of deportation.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court for the Northern District of Ohio, sitting by designation