Marco Rimola **GUTIERREZ,**
et al., Petitioners,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 02–3113.

United States Court of Appeals,
Sixth Circuit.

Oct. 1, 2003.

Before SUHRHEINRICH, COLE, and ROGERS, Circuit Judges.

OPINION

PER CURIAM.

Petitioners Marco Rimola Gutierrez, his wife, Maria Del Rosario De Leon De Rimola, and their two sons, all citizens of Guatemala, appeal the decision of the Board of Immigration Appeals (the "BIA") affirming the immigration judge's denial of their application for asylum and for withholding of deportation. Petitioners argue that they faced persecution from guerrilla organizations while in Guatemala because of Gutierrez's membership in the Guatemalan army. They also argue that if they are forced to return to Guatemala, they will be persecuted and killed because of Gutierrez's past service in the Guatemalan army.

In denying their claims, the BIA found that Petitioners had not met their burden

to establish past persecution. The BIA also found that Petitioners were unable to establish that they had a well-founded fear of persecution because there had been continued peace in Guatemala since the 1996 Peace Accords between the Guatemalan government and the guerrillas. Petitioners argue: (1) that the BIA erred in finding that the facts do not support a grant of asylum; (2) that Petitioners have met the more stringent standard required to establish eligibility for withholding of deportation.

For the reasons stated herein, we **DENY** the petition for review.

## I. BACKGROUND

### A. Factual background

More than 100,000 people were killed and an estimated 40,000 people disappeared during the thirty-six-year civil war in Guatemala between the government and rebel guerillas until the war was ended by the Peace Accords of 1996. Gutierrez was a member of the Guatemalan military for a total of fifteen years. During his ten years of active service, from 1981 until 1991, he fought in a number of engagements against the guerrillas. Gutierrez had a brother who was a member of the army and who disappeared in 1979, had another brother who was killed by guerrillas in 1982, and knew of other members of the Guatemalan army who were killed by guerrillas.

Gutierrez left the army in 1991 because he "got tired of being an oppressor." Gutierrez stated that he noticed little change in his country after two civilian governments had replaced the military government, and that corruption was still endemic. Although following his military service, Gutierrez went into "hiding" by growing a beard so that he would not be identified as a former member of the army, Gutierrez and his brother-in-law also established a cable company in Guatemala, which required him to travel around the country, sometimes as much as forty miles a day.

In March 1991, while Gutierrez was still a member of the army, guerillas stopped Petitioners as they traveled through the country by car. Gutierrez was not identified as a member of the military because he hid a gun and military identification in a diaper bag. The guerillas took Petitioners to the mountains and forced them to listen to anti-government propaganda for forty-five minutes before they were released. Petitioners were frightened, but escaped the incident unharmed.

In 1992, Gutierrez obtained a job as a driver for the Guatemalan embassy in Canada. Petitioners lived in Ottawa, Canada for six months, but they did not apply for asylum in Canada while residing there. Gutierrez and his wife testified that they wanted to live in the United States instead of Canada because Gutierrez's brother, a United States citizen, lived in Ohio and also because the United States had a cheaper cost-of-living and a warmer climate than Canada. In late 1992, Gutierrez traveled with his wife and children to Cleveland, Ohio to be with Gutierrez's brother. Petitioners entered the United States at the Canadian/New York border on December 19, 1992 under a non-visitor visa and were authorized to remain in the United States until June 18, 1993. They have lived in Cleveland, Ohio since entering the United States.

### B. Procedural Background

On May 31, 1995, the Immigration and Naturalization Service ("INS") sent each Petitioner an Order to Show Cause and Notice of Hearing. Petitioners were charged with remaining in the United States without authorization from the INS in violation of § 241(a)(1)(C)(i) of the Im-

migration and Nationality Act (the "Act"), 8 U.S.C. § 1251(a)(1)(C)(i). Conceding deportability, Gutierrez submitted an Application for Asylum and for Withholding of Deportation for the family on May 19, 1997.

In his application, Gutierrez cited the incident in which he and his family were briefly detained by guerillas and also stated that because the Peace Accords have not halted the conflict between the Guatemalan government and the guerillas, if he returned to Guatemala he would be recognized as a former member of the military, kidnapped by the guerrillas, and used as a pawn or killed.

A deportation hearing was held before Immigration Judge Elizabeth A. Hacker ("the IJ") on August 18, 1997 at which both Gutierrez and his wife testified. Prior to the hearing, the IJ forwarded Petitioners' application to the United States Department of State ("State Department") for comment. In response to the IJ's request, the State Department submitted Guatemala–Profile of Asylum Claims and Country Conditions, June 1997 (the "Profile"). Petitioners submitted a copy of a 1996 country report for Guatemala, which was also authored by the State Department. Both Gutierrez and his wife testified about the incident in which they were detained by guerrillas, and Gutierrez further testified about his fear of returning to Guatemala because of his former service in the army. The IJ issued an oral decision after testimony was completed on August 18, in which she denied Petitioners' claims both for asylum and for a withholding of deportation. In a per curiam decision issued on December 26, 2001, the BIA affirmed the decision of the IJ.

## II.  ANALYSIS

### A.  Standard of Review

A determination by the BIA is reviewed under the substantial evidence standard. *See Klawitter v. INS,* 970 F.2d 149, 151–52 (6th Cir.1992). We reverse the BIA only if a petitioner presents evidence such that a reasonable factfinder would have no choice but to conclude that the requisite fear of persecution existed—not simply because we would have decided the matter differently. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

### B.  Asylum

Substantial evidence supported the conclusions of the IJ and BIA that Petitioners failed to demonstrate either past persecution or a well-founded fear of future persecution sufficient to invoke the protections provided to refugees by the Act. An application for asylum must be considered through a two-step inquiry which asks: (1) whether the applicant qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42); (2) whether the applicant merits a favorable exercise of discretion by the Attorney General. *Perkovic v. INS,* 33 F.3d 615, 620 (6th Cir.1994). With regard to the first element, the Act defines a "refugee" as:

> [A]ny person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

§ 1101(a)(42)(A). Applicants for asylum therefore must present evidence to establish their status as a refugee either because they have "suffered actual persecution in the past or because they have a well-founded fear of future persecution."

8 C.F.R. § 208.13(a)-(b) (1999); *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. 812.

### 1. Past persecution

The evidence presented by Petitioners is insufficient to compel a finding that they suffered past persecution. Gutierrez successfully resided in his hometown both before and after his military service, and traveled frequently within Guatemala without incident. In the one exception—in which Petitioners were detained by guerrillas in 1991—the guerrillas were unaware of Gutierrez's military background. Moreover, the death and disappearance of Gutierrez's brothers in 1979 and 1982. respectively, do not alone demonstrate past persecution absent evidence that his brothers' fates related at all to Gutierrez or his safety. In short, Petitioners lived in Guatemala relatively free of harassment for several years, and any violence to which they were exposed was unrelated to Gutierrez's military service. Accordingly, we hold that substantial evidence supported the BIA's conclusion that Petitioners failed to establish that they were the victims of past persecution.

### 2. Well-founded fear of persecution

Nor have Petitioners presented evidence that would compel a finding that they have a well-founded fear of persecution. In order to establish a well-founded fear of persecution, an applicant who has not established past persecution[1] must demonstrate that: (1) she has an actual fear of persecution because of her race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable probability that she will be persecuted; and (3) she is unable or unwilling to return to that country because of

such fear. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir.1998) (citing *Perkovic*, 33 F.3d at 620–21). In other words, an applicant's fear must be both subjectively genuine and objectively reasonable.

Although the IJ found, and the government does not dispute, that Petitioners' subjectively feared that they would be persecuted upon his return to Guatemala, substantial evidence supports the conclusion that Petitioners' belief is not objectively reasonable. The IJ found that as a result of the 1996 Peace Accords, Guatemala's civil war has ended, a cease fire is in place, and the guerillas have disarmed. Although the IJ noted that Guatemala has faced added criminal violence of a general nature—such as the kidnappings and assaults described by Gutierrez—the consequences of this type of violence are typically borne equally across the political spectrum.

Having failed to meet the requirements of past and feared persecution, Petitioners do not qualify as refugees. Accordingly, we need not decide whether their claim merits the exercise of discretion by the Attorney General.

### C. Withholding of Deportation

For Petitioners to be granted a withholding of deportation, they must satisfy a higher burden of proof than that needed for their asylum application. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 431–32, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Because substantial evidence supports the BIA's denial of Petitioner's asylum application, Petitioners necessarily cannot meet the higher standard required for withholding of deportation.

---

1. An applicant who satisfies his burden of establishing actual past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1)(i) (1999).

### III. CONCLUSION

For the reasons stated herein, we **DENY** the petition for review.