NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  05a0069n.06

Filed:  January 31, 2005

CASE NO. 03-3675

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ESSAM SAMI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF |
| | ) | AN ORDER OF THE BOARD |
| v. | ) | OF IMMIGRATION APPEALS |
| | ) | |
| IMMIGRATION AND | ) | |
| NATURALIZATION | ) | |
| SERVICE, | ) | |
| | ) | |
| Respondent | ) | |

BEFORE:    CLAY and SILER, Circuit Judges, and BERTELSMAN,[1] District Judge.

BERTELSMAN, District Judge.   In 1993, petitioner Essam Sami, a native and citizen of Egypt, obtained conditional permanent resident status on the basis of his marriage to Eugenie Tawfik, a United States citizen.  After he and Tawfik divorced, Sami independently filed an application for removal of the conditions on his permanent resident status and sought a waiver of the requirement that Tawfik join the application on the ground that he and Tawfik entered their marriage in good faith.  An Immigration Judge ("IJ") found that Sami failed to show that he and Tawfik married in good faith, denied his request for a waiver, and ordered him deported.  The

---

[1]The Hon. William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Board of Immigration Appeals ("BIA") affirmed the IJ's decision in a written opinion. Sami seeks review of the BIA's determination that he failed to demonstrate that his marriage to Tawfik was in good faith and that he was therefore ineligible for a waiver. For the following reasons, we affirm the decision of the BIA.

## I.

Sami married Tawfik on September 21, 1993, in Cairo, Egypt. The marriage was arranged by Sami's uncle, whose son (Sami's cousin) was planning to be married to Tawfik's sister, Janette. Following their introduction by telephone, Sami and Tawfik corresponded for six months before Tawfik traveled to Cairo.

After the wedding in Cairo, the couple spent one week at the home of Sami's father in Alexandria, Egypt, where the marriage was consummated. Thereafter, Tawfik obtained an immigrant visa for Sami based on their marriage, and the couple came to the United States on separate flights on November 5, 1993. Upon entry to the U.S., Sami was accorded lawful permanent resident status on a conditional basis based upon his marriage to a U.S. citizen, pursuant to 8 U.S.C. § 1186a(a).

In the U.S., the couple lived in the home of Tawfik's mother in Michigan. They shared a bedroom for approximately one month until December 1993. The parties dispute whether Sami moved out of the bedroom voluntarily or whether Tawfik ejected him. In December 1993, Tawfik informed Sami that she was pregnant with his child. In February 1994, however, Tawfik voluntarily terminated the pregnancy. Tawfik moved out of her mother's home in March 1994. On November 7, 1994, the marriage was terminated by entry of a judgment of divorce.

On April 18, 1995, Sami filed an application for waiver of the obligation to file a joint

application in order to remove his conditional status on the basis that his marriage to Tawfik, although it had been terminated, was entered into in good faith. The INS District Director denied the application and deportation proceedings commenced. The INS thereafter issued a show cause order charging that Sami was deportable on two grounds: (1) that he was an alien whose conditional resident status was terminated, and (2) that he was an alien who engaged in marriage fraud.[2]

Evidentiary hearings were held before an IJ on July 29, 1999 and August 2, 1999. In a decision dated September 14, 1999, the IJ denied Sami the requested waiver and found him deportable based upon the termination of his status as a conditional permanent resident and based on a presumption that he procured his visa by fraud.[3]

Specifically, the IJ found that there was "little" extrinsic evidence that Sami and Tawfik ever intended to attempt to establish a life together. She also found that Sami was "argumentative" and "evasive" in his testimony, and that his assertion that he never wanted to come to the U.S. was belied by the fact that he remained in the country after his separation and divorce. Further, he had entered into another marriage with a U.S. citizen, deciding to marry just days after issuance of the show cause deportation order in this matter. The IJ also noted that Tawfik testified pursuant to a subpoena, and the IJ found her testimony to be "consistent and

---

[2]The show cause order was issued on November 8, 1995. As the IJ noted, Sami remarried another U.S. citizen after his divorce from Tawfik, and his second wife testified that they decided to marry on November 11, 1995. Based upon this second marriage, Sami also applied for alternative relief in the form of adjustment of status.

[3]Having determined that Sami attempted to obtain an immigration benefit through fraud, the IJ also concluded that he was ineligible for relief in the form of adjustment of status based on his second marriage to a U.S. citizen.

forthright." Thus, the IJ concluded that Sami had not carried his burden of proving that he entered into his marriage to Tawfik in good faith.

Sami appealed to the BIA, which affirmed the IJ's decision and dismissed Sami's appeal in an opinion dated April 17, 2003.

This petition for review followed.[4]

II.

### A.      *Standard of Review*

"An alien who challenges the factual basis of a determination by the BIA that he did not meet his burden of proving his marriage was entered into in good faith for the purposes of 8 U.S.C. § 1186a(c)(4)(B) is entitled to relief only if the determination is not supported by substantial evidence." *Ayyoub v. INS*, No. 02-3679, 2004 WL 618794, at *3 (6th Cir. Mar. 25, 2004) (citation omitted). All this standard requires is that the BIA's conclusion, based on the evidence presented, be substantially reasonable. *Id.*

"A court may not reverse a factual finding of the BIA merely because it would have reached a different conclusion based upon its review of the record; rather, 'in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed *compels* it.'" *Id.* (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)) (italics in original).

### B.      *"Good Faith Marriage" Waiver*

Under the Immigration and Nationality Act ("INA"), an alien who has been married to a

---

[4]By order dated July 2, 2003, another panel of this court denied Sami's motion to stay his removal pending disposition of this petition for review.

U.S. citizen for less than two years obtains the status of an alien lawfully admitted for permanent residence on a conditional basis. *See* 8 U.S.C. §§ 1186a(a)(1), (g)(1). The conditional status remains in effect for two years, after which the alien spouse must satisfy certain requirements to have the conditional status removed. Specifically, the alien and his or her spouse must file a joint petition for removal of conditional status and appear for a personal interview with the immigration authority. *See* 8 U.S.C. § 1186a(c)(1).

If the alien cannot satisfy the joint petition and interview requirement, however, he or she may apply for a waiver of those obligations. In pertinent part, the waiver provision states:

> The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) if the alien demonstrates that –
> . . .
>
> > (B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1).
> > . . .
>
> In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.

8 U.S.C. § 1186a(c)(4)(B).

The immigration regulations provide that, in considering whether an alien entered into a qualifying marriage in good faith, the INS "shall consider evidence relating to the amount of commitment by both parties to the marital relationship." 8 C.F.R. § 216.5(e)(2). Such evidence may include:

> (i)     Documentation relating to the degree to which the financial assets and liabilities of the parties were combined;

5

(ii)    Documentation concerning the length of time during which the parties cohabited after the marriage and after the alien obtained permanent residence;

(iii)    Birth certificates of children born to the marriage; and

(iv)    Other evidence deemed pertinent by the director.

*Id.*

Ultimately, the BIA must determine whether the parties "intended to establish a life together at the time they were married." *Ayyoub*, 2004 WL 618794, at \*4 (citation omitted). The actions of the parties after their marriage may be considered to the extent the actions illuminate the intent of the parties at the time they married. *Id.*

**C.    *Petitioner's Claim***

Although Sami presents plausible arguments as to why the IJ could have reached a different conclusion, the evidence is not so strong as to compel a finding in his favor.

The IJ, reviewing the factors listed in the INS regulations, found little extrinsic evidence that Sami and Tawfik ever established a life together after they were married. Within a month of coming to the United States, the couple ceased sharing a bedroom and never did so again. Tawfik moved out of her mother's home a few months later, and the couple rarely saw each other thereafter. Further, there was no evidence of any shared financial assets or liabilities, such as bank accounts or tax returns.

The IJ also found Sami to be "argumentative" and "evasive" in his testimony. Sami contradicted himself as to the amount of money spent on the wedding. Further, while he stated that he never wanted to come to the United States in the first place, he remained here after he and Tawfik separated, thereafter marrying another U.S. citizen just days after learning of the

6

deportation order in this matter.

The IJ also found credible Tawfik's testimony that Sami's attitude toward her changed dramatically once they were in the U.S. While Tawfik and Sami dispute who instigated Sami's departure from their bedroom[5], it is undisputed that they never lived together again after their first month in the U.S. Tawfik also testified that during an argument, Sami alluded to the fact that he had only married her to obtain lawful permanent resident status.

Further, the IJ found Sami to be not credible based, in part, on the fact that letters of support that he claimed were written to him voluntarily by Tawfik's younger sister were, by her own testimony, requested by him.

All of this evidence, or lack thereof, supports the conclusion that Sami failed to show that he and Tawfik "were committed to their marital relationship when they married or that they intended to establish a life together at that time." *Ayyoub*, 2004 WL 618794, at *5. The BIA's decision is thus supported by substantial evidence, and the petition for review should be denied.

III.

For the foregoing reasons, we **AFFIRM** the decision of the BIA.

---

[5]Sami claims that Tawfik ejected him from the bedroom, while Tawfik claims he moved out voluntarily.