File Name: 06a0132n.06

Filed: February 17, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-3801

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

EDUARD GJONI,

      Petitioner,

v.

ALBERTO GONZALES, UNITED STATES
ATTORNEY GENERAL,

      Respondent.

ON APPEAL FROM THE
BOARD OF IMMIGRATION
APPEALS

_____/

BEFORE:     MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge. Petitioner, Eduard Gjoni, seeks review of a final

order of the Board of Immigration Appeals affirming the decision of the immigration court denying

his request for asylum and withholding of removal under the Immigration and Nationality Act

("INA"). The Board of Immigration Appeals affirmed the immigration court's denial of Gjoni's

application for asylum without an opinion. In his petition for review, Gjoni argues that: (1) the

immigration court improperly found no past persecution; (2) the immigration court improperly

denied Gjoni's application for asylum; (3) the Board of Immigration Appeals failed to provide

Gjoni with a fair review of his appeal; and (4) the Board of Immigration Appeals's affirmance of

the immigration court's decision without opinion was unconstitutional. Upon review, we conclude

that the decision to deny Gjoni's asylum claim was supported by substantial evidence and that the

Board of Immigration Appeals did not err in designating this case for review by a single Board of Immigration Appeals member. Therefore, Gjoni's petition for review is DENIED.

I.

Gjoni is a thirty-one year old male and a native citizen of Albania. According to his application for asylum and his testimony at his removal hearing, Gjoni became a member of Albania's Democratic Party in 1994 while in medical school in Tirana, Albania. Gjoni was active throughout his membership in the Democratic Party, organizing rallies, giving speeches and protesting the Albanian government. In 1999, he was elected the General Secretary of the Democratic Party in his hometown of Rreshen. Gjoni held this position until he left Albania.

Gjoni alleges that he, along with other members of his immediate family, was persecuted by Albania's Socialist government beginning in 1997 as a result of their membership in the Democratic Party. Gjoni asserts that in June 1997, while working as the Vice-Chairman of the Election Commission in Tirana, armed men ordered by the socialists threatened him with guns and bombs and demanded that he falsify election results. When he refused, the armed men beat him. On July 27, 1998, Gjoni participated with his brothers in a Democratic Party demonstration, during which he was beaten by police. On September 14, during a Democratic Party demonstration, Gjoni asserts that the police used violence against the demonstrators and wounded Gjoni's right leg which required stitches.

Upon his graduation from medical school in 1999, Gjoni left Tirana and returned to Rreshen. Although Rreshen was in need of physicians, Gjoni claims that the Socialist government refused to hire him based on his political affiliations. Nonetheless, Gjoni continued his work with the

Democratic Party. On October 3, 1999, Gjoni and his brother Leonard were shot at by an armed man and Leonard was wounded. Gjoni took him to the Rreshen Emergency Room where surgery was performed to remove the bullet. On October 16, 1999, while giving a speech at a Democratic Party demonstration, Gjoni claims he was arrested by police and held for three days despite his requests for a lawyer or a court hearing. During those three days, Gjoni asserts he was maltreated and beaten. Gjoni claims that on November 28, 1999, armed men, whom Gjoni believes were members of the secret police, beat him and threatened to harm him if continued to speak out against the government.

The following year, on March 22, 2000, Gjoni was arrested in Tirana at a Democratic Party rally. Gjoni claims he was held by police for two days and was beaten and maltreated. Finally, on May 5, 2000, Gjoni alleges that he came out of the Rreshen Democratic Party offices and was beaten and shot at by several men. Following this incident, Gjoni left Albania and went to Italy. After remaining in Italy for approximately ten days Gjoni entered the United States at Detroit, Michigan on June 1, 2000, using a fraudulent Italian passport that he had purchased. Approximately seven months later, Gjoni filed a application for asylum based on the aforementioned claims.

A hearing was held on Gjoni's petition on January 28, 2003. At the hearing, Gjoni testified regarding his claims of past persecution and introduced several pieces of corroborating evidence, including: (1) two Albanian newspaper articles that made references to Gjoni's persecution; (2) three medical reports, one that verified the shooting of his brother Leonard, and two that attested to medical treatment Gjoni received following alleged police violence at Democratic Party demonstrations; (3) Gjoni's Medical Degree; (4) Gjoni's Democratic Party Membership Card; (5) a verification by the Democratic Party Branch of Mirdite, corroborating several of Gjoni's claimed

incidences of persecution; and (6) an affidavit by Gjon Gjonmarkkaj, a fellow member of the Democratic Party, who had witnessed several of Gjoni's claimed incidences of persecution. The immigration court reviewed this evidence, along with Gjoni's testimony and concluded that Gjoni failed to establish a claim for asylum. Gjoni appealed this decision to the Board of Immigration Appeals which summarily affirmed the immigration court's decision. This appeal then followed.

## II.

Gjoni raises two main claims on appeal. First, that the Board of Immigration Appeals erred in affirming the immigration court's denial of his asylum application based on the immigration court's finding that Gjoni lacked credibility and that he failed to provide sufficient corroborating evidence. Second, Gjoni alleges that the Board of Immigration Appeals's use of a streamlined review process unconstitutionally denied him due process. We address each of these claims in turn.

## A.

In reviewing a decision by the Board of Immigration Appeals to deny an application for asylum, we will uphold the Board of Immigration Appeals's determination if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Applying this standard of review, we "may not reverse the Board's determination simply because [we] would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001). Rather, in order to reverse the factual findings of the Board of Immigration Appeals, this court must "find that the evidence 'not only supports a contrary conclusion, but indeed compels it." *Id.* (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)). In this case, we conclude that there is

substantial evidence to support the Board of Immigration Appeals's denial of Gjoni's application.

Under the INA, the Attorney General may grant asylum to an alien who qualifies as a "refugee," defined as one "who is unable or unwilling to return to [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). An asylum applicant bears the burden of demonstrating that "persecution is a reasonable possibility should he be returned to his country of origin." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir.1994) (internal quotation omitted). Despite this burden, an applicant need not demonstrate that he will probably be persecuted if returned because "[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a).

Gjoni asserts that the Board of Immigration Appeals improperly affirmed the immigration court's dismissal of his petition by "improperly impos[ing] a negative slant on the testimony provided which would otherwise established Petitioner's claim of a well founded fear of persecution." Petitioner's Br. at 23. The immigration court's conclusion that Gjoni failed to demonstrate sufficient evidence of persecution to warrant the grant of asylum was primarily based on two findings: (1) that Gjoni's testimony was incredible, and (2) that Gjoni failed to provide sufficient evident corroborating his testimony. Both of these findings are supported by substantial evidence in the record.

Gjoni argues in his petition that the Board of Immigration Appeals erred in failing to reverse the immigration court's adverse credibility finding. We have stated that although "an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons. An adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency." *Sylla*, 388 F.3d at 926 (internal quotation and citations omitted). In addition, "[s]peculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." *Shire v. Ashcroft*, 388 F.3d 1288, 1296 (9th Cir.2004) (internal quotation omitted). Where the credibility determination is based on inconsistencies found by the immigration court but unsupported in the record, we have reversed the immigration court's determination. *Sylla*, 388 F.3d at 930.

While Gjoni's testimony was not so inconsistent as to make an adverse credibility determination compelled by the record, there are sufficient inconsistencies that go to the heart of Gjoni's claims in his testimony to support the immigration court's adverse credibility determination. First, Gjoni altered his testimony at several points during his removal hearing. At one point during questioning Gjoni indicated that he left his Albanian passport in Italy when he came to the United States. Later Gjoni stated that he brought the Albanian passport with him to the United States.

Additionally, Gjoni stated in testimony that in May 2000 he was beaten and shot at as he left the Democratic Party offices in Rreshen. This statement was inconsistent with the affidavit by Gjon Gjonmarkaj that stated that Gjoni had been stoned rather than beaten during this event and made no mention of any shots being fired. Upon being confronted with this affidavit, Gjoni changed his testimony stating that he had in fact been stoned rather than beaten as he initially asserted.

Moreover, Gjoni could provide no explanation as to why Gjonmarkaj failed to indicate in his affidavit that any shots were fired.

Finally, the circumstances of Gjoni's situation understandably led the immigration court to question Gjoni's credibility. During his testimony Gjoni acknowledged that his medical school education was paid for by the Albanian government, the same government that Gjoni alleges was persecuting him. The claim begs the question why the government would have paid for Gjoni's medical school education if it wanted to persecute him for his political affiliation with the Democratic Party? These inconsistencies suggest that here it is at least reasonable to be skeptical of Gjoni's credibility and that there is a basis in the record for the immigration court's determination that Gjoni's testimony was not credible. These inconsistencies by themselves, however, might be insufficient to defeat Gjoni's asylum application. While these inconsistencies demonstrate the Gjoni's testimony was not entirely accurate as to the details of the persecution he suffered in Albania, none suggest that Gjoni's testimony was wholly fabricated. When these inconsistencies are viewed in concert with Gjoni's failure to adequately corroborate his claims, however, we conclude that there is substantial evidence to support the Board of Immigration Appeals's affirmance of the immigration court's decision to deny Gjoni's application for asylum.

Turning to the immigration court's finding that Gjoni failed to provide adequate corroborating evidence, we again find sufficient evidence in the record to support the immigration court's conclusion. Although "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration," 8 C.F.R. § 1208.13(a), we nonetheless have held that "where it is reasonable to expect corroborating evidence [t]he absence of such corroborating

evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir.2004) (internal quotation omitted). An applicant may be required to produce supporting documentation where " it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *Id.* at 382-83 (internal quotation omitted).

Although Gjoni offered some corroborating evidence, many of the documents he offered did little to advance his case. The two newspaper articles Gjoni provided were inconsistent with Gjoni's testimony and his asylum application. One article asserted that Gjoni left Albania and went to England, when in fact Gjoni had gone to Italy before arriving in the United States. The other article reported that Gjoni had been threatened by unidentified men in July 2000 based on his political ties; however, Gjoni was no longer in Albanian in July 2000. Additionally, as discussed above, the affidavit submitted by Gjoni's friend Gjon Gjonmarkaj does little to bolster Gjoni's claim. Although the affidavit asserts that Gjonmarkaj witnessed several persons attack Gjoni after a Democratic Party Meeting in May 2000, Gjonmarkaj's version of the events differs critically from Gjoni's recount of the events. Gjoni alleges that he was beaten and shot at, while Gjonmarkaj's affidavit claims that the men stoned Gjoni and mentions no shooting occurring. Gjoni also introduced three medical reports that Gjoni claims show the injuries he and one of his brothers received as a result of government persecution. The immigration court, however, understandably was hesitant to credit any great weight to these medical reports. The medical reports were not authenticated as Gjoni did not call any witnesses to corroborate the contents of the medical reports nor could he produce the envelopes in which the reports were sent to him. Gjoni was consequently unable to prove to the

immigration court that the documents were sent from Albania, as Gjoni claimed, much less that their contents were accurate. Thus, the newspaper articles, Gjonmarkaj's affidavit, and the medical reports are problematic as corroborative evidence.

More importantly, the immigration court also determined that probative corroborating evidence was reasonably available to Gjoni, yet not provided. Specifically, Gjoni's application and testimony indicate that his immediate family had a long history of involvement in the Albanian Democratic Party. Additionally, Gjoni indicates that several of the alleged incidents of persecution involved his brothers. Yet Gjoni failed to call any of his family members as witnesses on his behalf or provide affidavits from them that would corroborate his testimony. Affidavits from Gjoni's immediate family members would not have been difficult for Gjoni to obtain. At the time of the hearing, Gjoni's brothers lived with him in Detroit. Thus, it would have been easy for any one of the three of Gjoni's brothers to be called as a witness. Morever, Gjoni's parents now live in Greece and Gjoni's sister now resides in Belgium. There is nothing in the record that suggests it would have difficult for Gjoni to have obtained from them affidavits that supported his testimony.

Furthermore, at the removal hearing, Gjoni did not provide any reasonable explanation for the absence of this corroborating evidence. Gjoni merely stated that he believed that providing the testimony of his family members to corroborate his account of the persecution he suffered would not further his claim and thus he did not call his brothers as witnesses at the hearing or provide affidavits from his parents or sister. Without such evidence, particularly when viewed in light of Gjoni's at times inconsistent and incredible testimony, substantial evidence exists to supports the Board of Immigration Appeals's affirmance of the immigration court's conclusion that Gjoni failed

to satisfy his burden of demonstrating a well-founded fear of future persecution if he was to return to Albania. Therefore, we conclude that the Board of Immigration Appeals properly denied Gjoni's application for asylum.[1]

B.

Gjoni's remaining arguments on appeal seem to allege that the streamlining procedures followed by the Board of Immigration Appeals (specifically, the assignment of cases to single Board members and the issuance of summary affirmances without opinions) violate due process. We conclude that such an argument affords Gjoni no relief.

In 1999, the Department of Justice adopted a series of streamlining procedures for the handling of immigration appeals by the Board of Immigration Appeals. As part of the procedures appeals could now be assigned to single Board of Immigration Appeals members and the summary affirmance of immigration court decisions without issuance of an opinion setting forth the Board of Immigration Appeals's reasoning would be permitted. *See* 8 C.F.R. §§ 1003.1(e)(4) and (6). Gjoni contends that this streamlining procedure denied him adequate review by the Board of Immigration Appeals of his appeal and prevented him from receiving fair administrative and judicial review. In *Denko v. INS*, we considered and rejected a similar due process challenge to the Board of Immigration Appeals's streamlining procedures. 351 F.3d 717, 729-30 (6th Cir.2003) ("As have

---

[1] The immigration court offered an alternative basis for its denial of Gjoni's petition for asylum, stating that "Assuming arguendo, however, even if you believe [Gjoni's] story, the Courts notes [] that [Gjoni] hasn't demonstrated any past persecution." Given that we conclude there is substantial evidence in the record to support the immigration court's decision not to believe Gjoni's claims of past persecution, we need not address the validity of the immigration court's alternate holding.

many circuits before us, we now join the recent trend of our sister circuits by concluding that the

BIA's streamlining procedures do not themselves alone violate an alien's rights to due process . .

. Likewise, it is not a due process violation for the BIA to affirm the IJ's decision without issuing

an opinion.") (internal quotation marks and citations omitted). As we explained in *Denko*, without

"tangible evidence" that the Board of Immigration Appeals did not properly review a case, we will

not assume that an applicants constitutional rights have been violated based simply on the

procedures provided by the streamlining provisions. *Id.* at 728-29. In addition, because a "BIA

member must give the case his or her full consideration and assess the IJ's decision before the BIA

member can determine that summary affirmance without opinion is the proper procedure," the

summary affirmance provision does not prevent adequate review by the Board of Immigration

Appeals. *Id.* at 729. We also indicated in *Denko* that the Board of Immigration Appeals's issuance

of summary affirmances does not hinder judicial review of Board of Immigration Appeals decisions

because "the summary-affirmance-without-opinion rule renders the immigration court's decision

the final agency order, and we review that decision." *Id.* at 730. Thus, based on our prior decision

in *Denko*, we conclude that Gjoni's due process claim regarding the Board of Immigration Appeals's

handling of his case lacks merit.[2]

III.

---

[2] Gjoni's brief suggests that this case is different than *Denko* because "What the IJ has done [here] is to improperly impose a negative slant on the testimony provided which would have otherwise established Petitioner's claim of a well founded fear of persecution." It is unclear how this allegation, even if true, changes an otherwise constitutionally permissible streamlining program into an unconstitutional one. Thus, we conclude that despite this claim, this Court's holdng in *Denko* is controlling.

For the reasons discussed above, we DENY Gjoni's petition for review.