ROGERS, Circuit Judge,
dissenting.
I respectfully dissent because, in light of the deference afforded to findings of the Board of Immigration Appeals, I would hold that substantial evidence supports the immigration court’s adverse credibility determination.
*500 Toma’s omissions during his two initial interviews cast doubt upon his later claim of religious persecution. In those interviews, Toma claimed that he had been persecuted by the Iraqi government for selling anti-government and anti-Ba’ath party videotapes, but he mentioned his religion on only three brief occasions. In neither the first interview nor the second, lengthier interview two weeks later (consisting of 41 questions) did Toma discuss selling Christian videotapes, the two alleged Fatwas calling for his death, or any meaningful religious persecution. In fact, in response to the interviewer’s question concerning how Toma knew he was to be executed if he returned to Iraq — an opportune time to mention the Fatwas — Toma stated only that it was because “the way they treated me — there was no papers— nobody would know and my brother had a hard time” and because the “Government is a dictatorship.” It is incredible that one who had two death edicts issued against him and who had such problems stemming from his sales of Christian videotapes would state only that he feared death for selling anti-government videotapes. For this reason, and because the panel is reviewing under a “highly deferential standard,” Yu v. Ashcroft, 364 F.3d 700, 703 (6th Cir.2004), I would hold that substantial evidence supports the immigration court’s adverse credibility determination.
Although cases from the Third and Ninth circuits have treated initial airport interviews as insufficient standing alone to support adverse credibility determinations, see Singh v. INS, 292 F.3d 1017, 1021-24 (9th Cir.2002); Balasubramanrim v. INS, 143 F.3d 157, 162-64 (3d Cir. 1998), those cases are distinguishable for several reasons. First, in both cases the courts questioned the accuracy of the interviews because the applicants were not given reliable translators. See Balasubramanrim, 143 F.3d at 163 (no translator and no evidence that petitioner spoke proficient English); Singh, 292 F.3d at 1022 (translator did not even speak petitioner’s language). Here, however, Toma was given a translator, and he does not argue that the translations were faulty. Second, both Balasubmmanrim and Singh expressed concern over the reliability of initial airport interviews because of the brevity of the interviews and applicants’ nervousness and fear of authorities. See Balasubmmanrim, 143 F.3d at 162-63; Singh, 292 F.3d at 1023-24. In this case, Toma was not only interviewed at the airport, he was also interviewed at greater length two weeks later. This gave Toma a chance to become more comfortable speaking with U.S. officials and to expand upon his first set of answers.
There was a sufficient basis for the immigration judge to have determined that Toma shifted his asylum claim to one of religious persecution after the fall of the regime of Saddam Hussein. As a result, I cannot say that the evidence “compels” a conclusion contrary to the immigration court. Klawitter v. INS, 970 F.2d 149, 152 (6th Cir.1992). I would therefore deny the petition for review.