**Anton KALAJ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 02–3568.**

United States Court of Appeals, Sixth Circuit.

July 9, 2003.

Before BOGGS and GILMAN, Circuit Judges; and DOWD, District Judge.*

### ORDER

Anton Kalaj, a native and citizen of Albania, petitions for review of a Board of Immigration Appeals (BIA) order that affirmed the decision of the Immigration Judge (IJ) to deny Kalaj's application for asylum or withholding of deportation, pursuant to 8 U.S.C. §§ 1158(a) and 1253(h). The parties are represented by counsel and have waived oral argument, and this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Kalaj entered the United States in December 1994, and the INS began exclusion proceedings. Kalaj conceded excludability and sought asylum on the grounds of persecution because of religion, social group, and political opinion. He testified that he had been jailed and beaten by the government because of his efforts to regain land taken from his family by the former communist government. The IJ found that Kalaj was not credible and that he had not shown either past persecution or a well-founded fear of persecution if he returned to Albania. Kalaj appealed to the BIA, and the BIA affirmed the IJ's decision without opinion. Kalaj filed a timely petition for review.

In his petition for review, Kalaj argues that: (1) the IJ's finding that he was not credible was not supported by substantial evidence; (2) the IJ's requiring corroboration of Kalaj's testimony is contrary to law; and (3) he has established a well-founded fear of persecution.

This court reviews a decision denying asylum to determine whether it is supported by substantial evidence, and may not grant a petition for review merely because it would have decided the case differently. *Mikhailevitch v. INS,* 146 F.3d 384, 388 (6th Cir.1998).

Upon review, we grant the petition because the IJ's decision is not supported by substantial evidence. Kalaj was born in Albania in 1968 to a family that had once held land but lost it to the communist government. He testified that, after the collapse of the communist government in 1991, he joined organizations and participated in demonstrations in order to seek the return of his family's land as promised by the new government. According to Kalaj, the members of the political party in control of the government were actually holdovers from Albania's communist government. As a result of his activities,

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio sitting by designation.

Kalaj was jailed several times during the years 1991 to 1994. He testified that he was beaten severely when jailed in 1993 and 1994, leaving him with scars and without the full use of his left hand. Kalaj was released pending a court date when his family "paid a certain amount of money" or "paid someone off." Kalaj then left Albania for Italy, remained in Italy for about eight months, and traveled to the United States via France using a false Italian passport.

Kalaj submitted the affidavits of Teodor Kareco and Prenk Camaj in support of his claim for asylum. Kareco, an Albanian professor of economics, described Albania's transition from communism to democracy in the early 1990s, the government's treatment of those seeking the return of land, and the influence of former communist officials in the new government. Camaj, a Catholic priest, stated that he had known Kalaj since June 1992. Camaj swore that Kalaj had been threatened because he is anti-communist, was a member of organizations seeking the return of confiscated land, helped reconstruct local Catholic churches, and spoke out against Albania's breaking of international sanctions against Yugoslavia. He also stated that he had seen Kalaj's injuries and believed Kalaj would be killed if forced to return to Albania.

We conclude that the IJ relied on insufficient grounds to reject Kalaj's testimony and that of his corroborating witnesses. The IJ questioned the nature of the charges that resulted in Kalaj being jailed and doubted that Kalaj's father could have bribed an official to have him released. In his written statement, Kalaj said that his family tried to bail him out when he was arrested in 1994, but was not successful until after he was beaten. Through the interpreter, Kalaj used the phrases "paid a certain amount of money" and "paid some-one off," and indicated that he was released "up until my court date." In any event, the discrepancies between Kalaj's asylum application and his testimony that the IJ identified were not material and did not involve the heart of Kalaj's claim. *See de Leon–Barrios v. INS*, 116 F.3d 391, 394 (9th Cir.1997).

The IJ also found that his observation of Kalaj's injuries did not comport with the severity of Kalaj's description. He saw scars on Kalaj's head and left hand, but stated that it did not appear to him that the hand was impaired in any way. Although Camaj corroborated Kalaj's testimony about his injuries, the IJ disregarded Camaj's testimony because he found him to be "cavalier" with the truth. The IJ based this conclusion on Camaj's statement that he had consulted a plastic surgeon on Kalaj's behalf, as contrasted with Kalaj's testimony that he merely spoke to a doctor. The IJ did not cite any other reason to question the priest's testimony.

In conclusion, the IJ used questionable grounds to find that Kalaj was not credible and improperly rejected the corroborating statements by Kalaj's witnesses. Because the IJ rejected Kalaj's claim in large part on the basis of Kalaj's credibility, we grant Kalaj's petition for review and remand the case to the BIA to consider the merits of Kalaj's claim. *See INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 355, 154 L.Ed.2d 272 (2002).