**Bassam GARADAH, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondents.**

No. 02–3764.

United States Court of Appeals, Sixth Circuit.

Jan. 8, 2004.

Shane C. Sidebottom, Bartlett & Weigle, Cincinnati, OH, for Petitioners.

Christopher C. Fuller, U.S. Department of Justice, Immigration Litigation, Civil Divison, Washington, DC, Lyle D. Jentzer, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, Joshua Braunstein, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, Emily A. Radford, U.S. Department of Justice, Office of Litigation, Washington, DC, for Respondent.

Before NELSON, CLAY and COOK, Circuit Judges.

CLAY, Circuit Judge.

Petitioner, Bassam Garadah, seeks review of the June 13, 2002 Order of the

Board of Immigration Appeals ("BIA"), affirming a final order of deportation issued by the Immigration and Naturalization Service ("INS" or the "Service") in Cincinnati, Ohio on August 22, 2001, denying Petitioner's application for asylum under Immigrations and Naturalization Act ("INA") § 208 and withholding of deportation under INA § 243(h).

Petitioner challenges the BIA's decision, arguing it erroneously summarily affirmed without opinion the Immigration Judge's ("IJ") determination. Petitioner argues that if the BIA had not summarily affirmed, it would have found that the Immigration Judge's opinion was without merit, as it denied asylum based on an improper application of the "firm resettlement" prohibition under 8 U.S.C. § 1158(b)(2)(A)(vi), and the "well founded fear" regulation under 8 C.F.R. § 208.13(b). For the reasons set forth below, this Court **AFFIRMS** the BIA's decision.

## BACKGROUND

### Procedural History

Petitioner entered the United States on or about October 19, 1997 as a non-immigrant on a one year visa for pleasure. The INS entered into deportation proceedings against Petitioner, on July 21, 1999, alleging he was removable under 8 U.S.C. § 1231; INA § 241(a)(1)(C)(i). Petitioner conceded removability, but applied for asylum, withholding of removal, and in the alternative, voluntary departure. On August 22, 2001 the matter was heard by an immigration judge in Cincinnati, Ohio, who denied Petitioner's application for asylum and withholding of removal but granted voluntary departure if Petitioner departed on or before October 22, 2001. Petitioner timely appealed the decision of the Immigration judge to the BIA. On June 13, 2002, the BIA issued an order affirming, without opinion, the results of the decision below, which became the final agency determination. On November 19, 2002, Petitioner filed a petition for review.

### Substantive Facts

Petitioner is an ethnic Palestinian, who is a native, but not a citizen, of Kuwait. In 1987, Petitioner left Kuwait and move to Budapest, Hungary on a student visa issued by the Hungarian government. While in Hungary in 1990, Petitioner learned that Iraq invaded Kuwait and that his remaining family in Kuwait had allegedly suffered harassment and abuse at the hands of Kuwaiti soldiers and the Kuwaiti Government. Petitioner's brother was physically attacked by a Kuwaiti soldier at the conclusion of the Gulf war, harassed at checkpoints and detained for hours. Soon after, Petitioner's father was terminated from his position in the ministry. As a result of Petitioner's father's termination, Petitioner could no longer afford to attend his university and left school in 1990. In 1993, however, Petitioner was able to complete his studies at a nearby institution in Budapest. Upon completion of his studies Petitioner remained in Budapest on a six-month renewable basis, through both work residency and work permit authorization, contingent upon Petitioner's ownership interest in a business that employed native Hungarians.

On or about October 1997, Petitioner and his wife came to the United States on a nonimmigrant visitor's visa for pleasure. Petitioner and his wife were authorized to stay for a temporary period not to exceed October 18, 1999, however, they overstayed this visa. As a result, on or about July 21, 1999, the INS initiated removal proceedings.

## DISCUSSION

This Court has jurisdiction to review the final decision of the BIA pursuant to 8

U.S.C. § 1252. We review questions of law *de novo. Huicochea–Gomez v. INS,* 237 F.3d 696, 699 (6th Cir.2001).

■ Petitioner challenges the BIA's affirmance-without-opinion procedure, alleging it violates an applicant's due process rights by simply upholding the IJ's decision, without further explanation. This Court recently rejected a similar claim in *Denko v. Immigration and Naturalization Service,* 351 F.3d 717 (6th Cir.) (holding that the BIA's streamline regulations do not themselves violate an alien's due process rights simply because they affirm without opinion the decisions of the IJ, since aliens are not constitutionally guaranteed rights to a BIA appeal, so long as there is a reasoned decision by an administrative law judge and review by a court of appeals; and the BIA's streamlined opinions are those that concur in the result reached by the IJ, deeming all errors in the reasoning of the IJ's opinion, if any, to be harmless). Furthermore, even if the BIA viewed the factual and legal issues differently from the IJ, the summary affirmance-without-opinion regulations render the IJ's decision the final agency order to be reviewed by this Court. *Id.* at 729. Therefore, based on the authority of *Denko,* we conclude that the BIA did not err in affirming, without opinion, the IJ's decision inasmuch as Petitioner was not prejudiced or harmed as a result.

Additionally, Petitioner asserts the Board erred in ruling he was ineligible for asylum as he claims he does in fact have a well-founded fear of future persecution on account of his nationality as a Palestinian in Kuwait, and on account of the past discrimination both his brother and father endured. Petitioner also asserts that the IJ's decision, and subsequent BIA's decision, erroneously determined his ineligibility for asylum based on his alleged firm resettlement in Hungary.

In reviewing the factual determinations of the Board regarding an aliens's eligibility for asylum and withholding of deportation, this Court must apply the substantial evidence standard. *Klawitter v. INS,* 970 F.2d 149, 151 (6th Cir.1992). Under this standard, deference is given to the BIA's determination and the BIA must be upheld if, based on the evidence presented, its conclusion was reasonable. *Id.* In order to reverse the BIA's decision the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed compels it. *Id.* at 152 (citing *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). This court, however, reviews the BIA's legal conclusions de novo. *Adhiyappa v. INS,* 58 F.3d 261, 265 (6th Cir.1995).

In petitioning for asylum, the applicant must meet the definition of a "refugee" within the meaning of Section 101(a)(42)(A) of the Immigration and Nationalization Act. The Act defines a refugee as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality is outside any county in which such a person last habitually resided, and who is unable or unwilling to avail himself of herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion …

*See* 8 U.S.C. § 1101(a)(42)(A).

In reviewing an application for asylum, an IJ or the INS must determine: "(1) whether the applicant qualifies as a refugee as defined by the statute; and (2) whether the applicant 'merits a favorable exercise of discretion by the Attorney General.'" *See Mikhailevitch v. INS,* 146

F.3d 384, 389 (6th Cir.1998) (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)). The petitioner bears the burden of establishing that he qualifies as a refugee "either because he/she has suffered past persecution or because he/she has a well-founded fear of future persecution." *See* 8 C.F.R. § 208.13(b). Such persecution must be based on account of "race, religion, nationality, membership in a particular social group or political opinion, and [the petitioner must be] unable or unwilling to return to, or avail himself or herself, of the protection of, that country owing to such persecution." *Id.* Credible testimony, without corroboration, has been deemed to necessarily fulfill this burden. *See* 8 C.F.R. § 208.13(a). This Court has previously held that persecution encompasses "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *See Ouda v. INS*, 324 F.3d 445, 450 (6th Cir.2003) (citing *Mikhailevitch*, 146 F.3d at 390). The asylum applicant who satisfies his burden of showing past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1)(i). The INS may rebut that presumption by establishing by a preponderance of the evidence that since the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted upon return. *Mikhailevitch*, 146 F.3d at 389.

A petitioner's application for asylum may also be denied if the Attorney General determines that the applicant has been firmly resettled in a third country. Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, ("IIRIRA") (Pub. L. 104–208, 110 Stat. 3009), an alien may not obtain asylum if he was "firmly resettled in another country prior to arriving in the United States." 8 U.S.C. § 1158(b)(2)(A)(vi). An alien is firmly resettled "if, prior to arrival in the United States, he or she entered into another nation with, or while in that nation received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 208.15 (2000). An alien may qualify for the exceptions to the "firmly resettled" bar to asylum if an alien establishes "that his or her entry into that country was a necessary consequence to his or her flight from persecution ... or that the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of that country that he or she was not in fact resettled." *Id.*

■ Petitioner asserts he does in fact have a well-founded fear of future persecution on account of his nationality as a Palestinian in Kuwait, and on account of the past discrimination both his brother and father endured. An applicant's fear of persecution, however, must be both subjectively genuine and objectively reasonable. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430–431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Mikhailevitch*, 146 F.3d at 389. Petitioner has not claimed to have suffered past persecution himself, rather his fears are based on those of his family members. Nevertheless, petitioner has not evidenced the objective situation under which his fear can be deemed reasonable. *Perkovic*, 33 F.3d at 620–21 (citing *Cardoza–Fonseca*, 840 U.S. at 431). Petitioner asserts that he fears persecution by Kuwait officials because his brother lost his job and was assaulted by a soldier. In addition, Petitioner contends that his father was fired from his government position as there was a general disdain for Palestinians during and after the Gulf War. (J.A. at 21.)

Although the IJ spent much time analyzing Petitioner's resettlement status in his opinion, the IJ did conclude that conditions in Kuwait are "less harsh towards persons of such nationalities, and it cannot be said on this record that [petitioner] would necessarily be persecuted." (J.A. at 24.) In order to reverse the IJ's determination on this issue, which the BIA ultimately affirmed, this Court would have to decide that the evidence would compel a reasonable fact finder to conclude that there is a reasonable possibility of Petitioner suffering future persecution if he were to return to Kuwait. 8 C.F.R. § 208.13(b)(2); see Perkovic, 33 F.3d at 620–21. Petitioner simply has not established the requisite fear.[1] Any determination that this denial was in part erroneously based upon the IJ's finding that Petitioner was firmly resettled, would be harmless error, since he has failed to fulfill the asylum eligibility requirement.

■ Petitioner also alleges the IJ's decision, and the subsequent BIA's decision, erroneously determined his ineligibility for asylum based on his firm resettlement in Hungary. In light of the principles of firm resettlement, set forth above, we find that the IJ erroneously concluded that Petitioner was firmly resettled in a third country.

Petitioner left Kuwait in 1987 and moved to Budapest on a student visa issued by the Hungarian government. Upon completion of his studies in 1993, Petitioner remained in Hungary on a six-month renewable basis, through both work residency and work permit authorization, which were conditioned upon his ownership of a business that employed native Hungarians. The IJ determined that Petitioner's lengthy stay and legal status fulfilled the requirements of firm resettlement, and deemed the preclusion to asylum to apply.

In Ali v. Reno, this Court found that the petitioner's refugee status in a third country precluded her from asylum in the United States. 237 F.3d 591, 595 (6th Cir. 2001). However, in Ali, the petitioner was granted asylum in that third country upon her arrival, and received a passport and a residency permit. 237 F.3d at 595. The Third Circuit in Abdille v. Ashcroft held that the language of, 8 C.F.R. § 208.15 explicitly centers the firm resettlement analysis on the question of whether a third country issued to the alien an offer of some type of official status permitting the alien to reside in that country on a permanent basis. 242 F.3d 477, 485 (3rd Cir.2001). By way of analysis, absent any official offering of permanent status to the alien, his presence would not be considered to constitute a firm resettlement. Abdille, 242 F.3d at 487. The IJ based his determination of Petitioner's resettled status on the length of Petitioner's stay in Hungary and his temporary residency permits. This can hardly be construed as an "offer of permanent resident status, citizenship of some other type of permanent resettlement...." 8 C.F.R. § 208.15. Therefore, the Court must disagree with the IJ's reasoning, to the extent that the Petitioner's asylum application was denied on the basis of his assumed firm resettlement.

Therefore, the IJ's denial of Petitioner's applications for relief of asylum and withholding of removal was correct in its re-

---

1. With respect to Petitioner's Withholding of Removal claim, this Court need not review the factual determination required to grant this type of relief, if we hold that the Petitioner has failed to fulfill the burden of proving a well-founded fear of future persecution necessary for relief under asylum, as withholding of removal has a more stringent burden of proof than that of asylum. See Cardoza–Fonseca, 480 U.S. at 431–32; Mikhailevitch, 146 F.3d at 391.

sult. Substantial evidence existed to support the BIA's affirmance without opinion, since Petitioner did not evidence any past persecution, nor did he have the well-founded fear of future persecution needed to entitle him to asylum or withholding of removal. Furthermore, the IJ's erroneous determination of Petitioner's status, as one who was firmly resettled in a third country, will ultimately not affect the end result of Petitioner's denial of asylum, given that Petitioner did not qualify as a refugee in the first instance.

### CONCLUSION

For the above stated reasons, the BIA's order is **AFFIRMED.**