**Nike Tom MARKU, Petitioner,**

v.

**John ASHCROFT, Attorney General; Immigration and Naturalization Service, Respondents.**

No. 03–3083.

United States Court of Appeals, Sixth Circuit.

Feb. 2, 2004.

Nike Tom Marku, pro se, Sterling Heights, MI, for Petitioner.

M. Jocelyn Wright, Anthony C. Payne, Washington, DC, for Respondent.

Before: MERRITT and SUTTON, Circuit Judges; and FEIKENS, District Judge.*

### ORDER

Nike Tom Marku petitions pro se for judicial review of an order of the Board of Immigration Appeals ("BIA"), which affirmed an immigration judge's finding that he and his minor son, Augustin Marku,

---

* The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

were subject to removal from the United States. His petition has been referred to a panel of this court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, the panel unanimously agrees that oral argument is not needed in this case. Fed. R.App. P. 34(a).

Marku and his son are natives and citizens of Albania, who entered the United States as non-immigrant visitors in 1999. The Immigration and Naturalization Service subsequently charged that they were subject to removal because they remained in this country without authorization beyond the period that had been allowed. Marku conceded removability and filed applications on behalf of himself and his son, seeking political asylum, the withholding of removal, and protection under the United Nations Convention Against Torture.

An immigration judge ("IJ") conducted a final administrative hearing, at which Marku testified that he had been subjected to political persecution in Albania because of his active support for democratic reforms. The IJ found that this testimony was not fully credible and denied his applications for relief. The BIA affirmed that decision on December 24, 2002.

Marku's asylum application is also treated as an application for the withholding of removal, even though the burden of proving eligibility for asylum is less onerous. See Mikhailevitch v. INS, 146 F.3d 384, 391 (6th Cir.1998). To obtain asylum, Marku must show that he is a refugee and that his asylum application merits relief as a matter of administrative discretion. See id. at 389. A refugee is "an alien who is unable or unwilling to return to his home country because of persecution or a well-founded fear of persecution on account of race, religion nationality, membership in a particular social group, or political opinion." Id. (citations and internal quotation marks omitted) (quoting INS v. Elias-

Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

We must uphold the BIA's decision if it is supported by substantial, reasonable, and probative evidence, even if we might have decided the case differently. Kolia-da v. INS, 259 F.3d 482, 486 (6th Cir. 2001). Thus, judicial review of Marku's asylum application may be granted only if the evidence compels a finding that he has the requisite fear of persecution. See id. Similarly, the denial of his application for relief under the Convention Against Torture is subject to judicial review only if compelling evidence shows that it is more likely than not that he would be tortured if he were removed to Albania. See Castellano–Chacon v. INS, 341 F.3d 533, 552 (6th Cir.2003).

■ Marku testified that he had been arrested in 1985, and imprisoned from that time until 1989 because of his support for democratic reforms in Albania. He indicated that he had not been persecuted from 1992 though 1996, when the democratic party came into power. During that period, Marku was the leader of the democratic party in the town of Velipoj, serving as the election commissioner and as a commissioner in charge of redistributing land. Communist sympathizers regained power in 1997, and Marku received a court summons in 1998 regarding his participation in political demonstrations. He also testified that a threatening note bearing a communist symbol had been posted on a pole outside his home in 1998.

The IJ cited several inconsistencies in Marku's testimony that involved issues central to his asylum claim. She noted that Marku initially testified that his wife had not visited him while he was imprisoned and that he later testified that she had only visited him in 1986. This testimony is undermined by the undisputed

fact that his son was born in 1989. The IJ also found that Marku's behavior had been inconsistent with the threat that he allegedly received in 1998, as he continued to work and live in the same neighborhood. She noted that Marku obtained a stamp for his passport at the police station in 1998, even though he allegedly feared reprisal for his refusal to submit to the court summons. Finally, the IJ found that Marku's testimony was general and ambiguous with regard to his activities as a democratic leader and commissioner.

Marku now argues that he can explain these inconsistencies. He asserts that his wife did visit him on two occasions in 1988, while he was still in prison. He also alleges that he had friends in the police department who protected him, and he has provided further specifics regarding the duties that he performed for the democratic party when it was in power. However, these unsworn assertions merely add an additional version of the facts that could have been reasonably rejected by the IJ. Hence, there was substantial support for the IJ's finding that Marku was not fully credible. *See Chebchoub v. INS*, 257 F.3d 1038, 1043–45 (9th Cir.2001).

Marku also argues that the BIA should have accepted his administrative brief, even though it was not timely served upon the respondent. However, that the BIA did consider the credibility issues that Marku now asserts, and its credibility finding is supported by substantial evidence.

▋ Marku has not presented compelling evidence to support his asylum claim. *See Koliada*, 259 F.3d at 487–88; *Chebchoub*, 257 F.3d at 1045. In addition, his allegations are now at least five years old and a State Department Country Report indicates that the political conditions in Albania have improved during that time. As Marku has not established eligibility for asylum, he is unable to meet the more rigorous standard required for the withholding of removal. *See Koliada*, 259 F.3d at 489; *Mikhailevitch*, 146 F.3d at 391. For similar reasons, he has failed to show that he is entitled to relief under the Convention Against Torture. *See Castellano–Chacon*, 341 F.3d at 552.

Accordingly, the petition for judicial review of the BIA's decision is denied. Rule 34(j)(2)(C), Rules of the Sixth Circuit.