NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0425n.06
Filed: May 23, 2005

Case No. 03-4169

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RONG HUA GAO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES BOARD OF |
| | ) | IMMIGRATION APPEALS |
| JOHN ASHCROFT, Attorney General | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: NELSON and BATCHELDER, Circuit Judges; COLLIER,[*] District Judge.

ALICE M. BATCHELDER, Circuit Judge. Petitioner Rong Hua Gao ("Gao") seeks

review of an order of the Board of Immigration Appeals ("BIA") which denied her applications for

asylum and withholding of removal pursuant to the Immigration and Nationality Act ("INA") and

the Convention Against Torture. Because the reasons proffered by the Immigration Judge ("IJ") for

finding Gao's testimony not credible are not sufficient to support such a finding, and because there

is no other basis in the record for finding Gao's testimony that goes to the heart of her asylum and

withholding of removal claims not credible, we reverse the BIA's dismissal of Gao's asylum and

withholding of removal applications and remand to the BIA for a determination on the merits.

**I.**

---

[*]The Honorable Curtis L. Collier, District Judge for the Eastern District of Tennessee, sitting by designation.

Gao is a citizen of the People's Republic of China ("China") who admits to being in the United States illegally. On February 24, 2000, Gao submitted to the Immigration and Naturalization Service ("INS") an application for asylum and withholding of removal, claiming China persecuted her by forcing her to abort a pregnancy and that China would persecute her in the future by forcing her to undergo sterilization. The IJ questioned whether Gao's asylum application was timely, but said that inasmuch as the Government did not contest Gao's assertion that she had filed the application within a year of her arrival in the United States, he would assume timeliness. Despite that statement, however, the IJ denied Gao's applications for relief, finding that the application had not been timely filed, and, in addition, holding that Gao's testimony was not credible.

In a one paragraph Order, the BIA declined to rely on some particulars of the IJ's adverse credibility findings, but found that "the Immigration Judge's adverse credibility finding is adequately supported by the record." The BIA also affirmed the IJ's finding that Gao failed to demonstrate that her asylum application was timely.

## II.

Gao claims that in September 1998, at the age of fifteen, she became pregnant by her boyfriend in the Fujian Province in China. Gao testified that the government family planning authorities forced her to undergo an abortion on January 3, 1999. A week later, the family planning authorities forced her to undergo the insertion of an intrauterine device ("IUD") to prevent conception. The authorities told Gao that if she became pregnant again before she was married, she would be forced to undergo another abortion and would be sterilized. The authorities required Gao to submit to quarterly pregnancy examinations, beginning in April 1999. Gao did not go for her July 1999 checkup because she thought she might be pregnant again by the same boyfriend. On August

2

13, 1999, Gao went to what she believed to be a private doctor in the Xie Gong village of Changle City. The doctor confirmed that Gao's IUD was no longer in place and that Gao was pregnant.

Fearing another abortion and sterilization, Gao hid from the family planning authorities in the home of her boyfriend's parents. During that time, cadres from the family planning bureau went to her parents' home several times looking for Gao because she had missed her July checkup. To escape abortion and sterilization, Gao left China on August 30, 1999. She arrived in the United States on September 1, 1999. On March 8, 2000, Gao gave birth to her son, Tyler Gau, at the NYU Downtown Hospital in Manhattan, New York.

Gao testified she fears returning to China because of the threat that she will be sterilized, or, if not sterilized immediately, she might again become pregnant and be forced to undergo an abortion and sterilization.

### III.

The Attorney General asserts that Gao waived her claim to withholding of removal under either the INA or the Convention Against Torture because in her brief before this court she discusses only the denial of her application for asylum. We hold that Gao did not waive her claim to withholding of removal. Gao explicitly challenged the IJ's and the BIA's credibility determination as a basis for dismissing *all* of her claims. An argument couched in terms of asylum is at once a claim for asylum and for withholding of removal. 8 C.F.R. § 1208.3(b) ("An asylum application shall be deemed to constitute at the same time an application for withholding of removal . . . ."). Consequently, the fact that Gao focused on asylum in her brief does not mean she waived her appeal of her withholding of removal claims.

### IV.

3

We must uphold the BIA's decision if it is supported by substantial, reasonable, and probative evidence, even if we might have decided the case differently. *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001); *Marku v. Ashcroft*, 89 Fed. Appx. 500, 501 (6th Cir. 2004); *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992). To reverse the BIA's decision, we must find that the evidence not only supports a contrary conclusion, but compels it. *Klawitter*, 970 F.2d at 152; *Marku*, 89 Fed. Appx. at 501. Only discrepancies between an applicant's testimony and her asylum application which go to the heart of the applicant's claim are relevant to the credibility determination of the IJ and the BIA. *See Kalaj v. INS*, 70 Fed. Appx. 297, 299 (6th Cir. 2003) (citing *de Leon-Barrios v. INS*, 116 F.3d 391, 394 (9th Cir. 1997)).

The Attorney General has the discretionary power to grant asylum to an alien who qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42), which defines a "refugee" as an alien who is unwilling or unable to return to her home country "because of persecution or a well-founded fear of persecution on account of . . . political opinion."

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42). The heart of all of Gao's claims is whether she was forced to undergo an abortion in China, and whether, if she is forced to return to China, she may be forced to undergo another abortion or involuntary sterilization. *See* 8 U.S.C. § 1101(a)(42); 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; 8 C.F.R. § 208.18(a)(1), (7).

4

The alien's own testimony, without corroboration, can be sufficient to support an application for asylum or withholding of removal where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for the alien's fear. 8 C.F.R. § 208.16(b); *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994); *see also Garadah v. Ashcroft*, 86 Fed. Appx. 76, 80 (6th Cir. 2004). In this case, the IJ relied on a number of alleged inconsistencies and problems with documentary evidence to conclude that Gao's testimony was not credible. Having found her not credible, the IJ denied her applications for asylum and withholding of deportation because she did not present corroborating evidence. After carefully reviewing this record, we conclude that none of the discrepancies in Gao's testimony relied on by the IJ went to the heart of her claims, and we reverse the adverse credibility determination of the BIA and the IJ.

Several of the "discrepancies" the IJ cited were not discrepancies at all. First, the IJ questioned Gao's credibility because Gao submitted a copy, as opposed to the original, of the Chinese record stating she underwent a forced abortion on January 3, 1999. There were no discrepancies between the document and Gao's testimony. We find that Gao's testimony regarding her abortion was believable, consistent, and sufficiently detailed to compel a finding that the testimony was credible, and she therefore did not need to submit evidence corroborating the abortion. 8 C.F.R. § 208.16(b). The fact Gao submitted a copy rather than an original does not discredit her.

The IJ also questioned Gao's testimony that she lived with her boyfriend in China. Gao indicated in her asylum application and testified at trial that she "lived with" her boyfriend when she was pregnant the first time. However, when the INS's attorney asked Gao at trial why she went to her own parents' house after her school discovered her first pregnancy, Gao testified that "I only

5

spend a few days with him in a week. I not living with him everyday." The attorney then asked Gao why she stated in her application that she lived with her boyfriend, and Gao responded, "What I mean is that we wanted to live together but that doesn't mean that I lived with him everyday." There is no discrepancy between this testimony and Gao's application, particularly in light of the language barrier. In the application Gao did not state that she had lived with her boyfriend everyday, nor did the application call for such specificity. Even if there is a discrepancy, whether Gao lived with her boyfriend or not does not go to the heart of Gao's claim for asylum.

Finally, the IJ questioned Gao's credibility because he found that she had changed her testimony regarding whether she told Chinese authorities the name of the man by whom she had become pregnant the first time. The exchange between the attorney for the INS ("Q.") and Gao ("A.") was as follows:

Q.  When you went in for the abortion did they ask who the father was?
A.  Yes. They did.….
Q.  Your [sic] not supposed to have a child before you get married, correct?
A.  Yes.
Q.  That goes for a man and a woman, correct?
A.  Yes.
Q.  Well, if they knew who [the father] was, why do you think they didn't go after him?
A.   Because I didn't tell them the kid's father's name.
Q.  Ma'am, I just asked you that and you said you did.
A.  I thought your question was did they ask me his name, but I didn't tell them.
Q.  What did you say to them when they asked you who the father was?
A.  I didn't tell them. They keep on asking me who is the father. I didn't tell them.…
Q.  Ma'am, you said the family planning people didn't know your boyfriend was the father of your child or the child that was actually aborted. How did they know to go to his parents' home to look for you?
A.  Because the system in China, if the cadres really want to find out something, they will go investigate and they will find out what happened.

6

This passage clearly shows that the INS attorney misunderstood Gao's testimony as to whether she told Chinese authorities the name of the man who had impregnated her, but that her testimony was indeed consistent.

The record does reflect a possible conflict between Gao's testimony and a document she submitted from a doctor in China. Gao testified that the doctor who confirmed her second pregnancy in China on August 13, 1999, was a private doctor who gave her some type of oral medication during her visit, while the documentary receipt she was given by that doctor contains a government seal and indicates the doctor gave Gao an "injection." These discrepancies are irrelevant, however, because this evidence does not go to the heart of Gao's claims. The doctor's receipt goes to the heart of Gao's asylum claim only insofar as it establishes the timeliness of her asylum application by demonstrating that she was in China and pregnant in August, 1999, less than one year prior to her filing the application in February 2000. Whether the doctor was a government doctor, and the nature of the medication he administered, do not affect the date on the document.

In finding Gao not credible, the IJ also pointed to certain shortcomings in her proof and certain elements of her story that the IJ found to be beyond belief. Specifically, the IJ found Gao's credibility undermined by her testimony that her boyfriend had been "very happy" to find out she was pregnant. Although the IJ's credibility determinations should be afforded considerable deference, it exceeds the bounds of reasonableness to refuse to believe a man could be happy to find out he was going to be a father. Basing an adverse credibility determination on such a finding is inappropriate, if not downright petty. The IJ also criticized Gao for failing to produce the actual fraudulent passport or other documents she used to enter the country, but such evidence does not go to the heart of Gao's claims, as it has no bearing whatsoever on her motives for leaving China.

7

Finally, we note that even the BIA rejected the IJ's adverse credibility findings as to Gao's loss of her IUD and her failure to include the father's name on the child's birth certificate.

## V.

Not only was the basis for the IJ's adverse credibility determination faulty, the record compels a finding that Gao's testimony supporting the heart of her asylum and withholding of removal applications was credible. First, Gao's testimony that the Chinese government forced her to abort a child, which in and of itself creates a rebuttable presumption that Gao is eligible for asylum and withholding of removal, 8 U.S.C. § 1101(a)(42), is uncontroverted. Additionally, Gao's testimony is uncontroverted that she had a child out of wedlock after being told that if she became pregnant again she would be sterilized. This testimony is detailed, consistent and believable, and combined with the evidence of China's population control policy, compels the conclusion that Gao's testimony is credible. We therefore reverse the BIA's dismissal of Gao's claims based on its adverse credibility determination.

## VI.

We further find that the record compels us to reverse the BIA's dismissal of Gao's asylum application based on its finding that her asylum application was untimely. We do not have jurisdiction to review the IJ's or the BIA's denial of an asylum application based on the factual determination that the application was untimely filed. 8 U.S.C. § 1158(a)(3); *Gjyzi v. Ashcroft*, 386 F.3d 710, 714 (6th Cir. 2004). We do, however, have jurisdiction to review an alien's claim that the IJ or the BIA made a legal error, such as a due process violation, in determining that the application was untimely filed. *Gjyzi*, 386 F.3d at 714. Gao claims that the IJ violated her constitutional and

8

statutory due process rights by cutting off her opportunity to present evidence of timeliness, a claim of legal error that we have jurisdiction to review.

We review de novo an alleged due-process violation based on the manner in which an IJ conducts a deportation hearing. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). Due process requires that an alien in a deportation proceeding be afforded a full and fair hearing, although the IJ is entitled to broad discretion in conducting that hearing. *Castellano-Chacon v. INS*, 341 F.3d 533, 552-53 (6th Cir. 2003). Here, the IJ advised the parties that he would assume timeliness of the application due to the Government's failure to raise the issue of timeliness. Without advising her to the contrary, the IJ then held that Gao had failed to provide evidence that the application was timely and dismissed it. The IJ thus denied Gao the opportunity to present proof and argument regarding the timeliness of her application. Further, absent the IJ's erroneous adverse credibility findings, the evidence supports a finding that Gao's application was in fact timely, meaning that Gao was prejudiced by the IJ's error. *See Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (requiring the alien to demonstrate prejudice in order to succeed on a due process claim). We therefore hold that Gao was denied due process, and we reverse the BIA's finding that Gao's asylum claim was not timely filed.

## VII.

For the foregoing reasons, we **REVERSE** the BIA's dismissal of Gao's asylum and withholding of removal applications and **REMAND** to the BIA for a determination on the merits of those claims.

9