NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0323n.06
Filed: April 28, 2005

No. 03-3672

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| ARDIANA VARDHAMI, RENATO VARDHAMI, and KRISTIAN VARDHAMI, )))) | |
| Petitioners-Appellants, ) | ON APPEAL FROM THE BOARD OF IMMIGRATION APPEALS |
| v. )) | |
| ) | OPINION |
| ALBERTO GONZALES, Attorney General, ) | |
| Respondent-Appellee. )) | |

**Before: MERRITT, MOORE, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Ardiana Vardhami, a citizen of Albania, entered

the United States illegally in May of 1999, and filed for asylum and withholding of removal 11

months later. Her initial asylum application was based on the claim that her husband was detained

and tortured by the police after attending a political demonstration. In December of 2000, Vardhami

submitted an amended application focusing on a previously unmentioned claim that she had been

raped by Albanian police officers in violation of the Convention Against Torture.

Vardhami's claims were found by the immigration judge (IJ) not to be credible, and her

requests for asylum, withholding of removal, and protection under the Convention Against Torture

were denied. The Board of Immigration Appeals (BIA) affirmed. For the reasons set forth below,

we **AFFIRM** the judgment of the BIA.

## I. BACKGROUND

### A.    Factual background

In May of 1999, Vardhami, her husband Renato, and her son Kristian entered the United States carrying false passports.  Vardhami and her husband both filed asylum and withholding of removal applications in April of 2000.

Vardhami's application focused on two incidents of political violence.  The first occurred in 1991, when her husband was allegedly imprisoned for a month after attending a demonstration against the ruling Communist Party and tortured during his imprisonment.  A second incident, discussed in more detail, allegedly occurred when the Vardhamis attended the September 1998 funeral of Azem Hajdari, a murdered opponent of the Albanian regime.  Vardhami claimed that members of the Albanian special police force "hit [her and her husband] . . . with billy clubs and fists," and that "she saw the special police force . . . capture her husband and drive him away."  The police allegedly detained Renato for three days, during which time they "physically and psychologically tortured him."  As part of the filed documentation, Vardhami's attorney declared that the application had been read to the asylum-seeker in her native language before Vardhami signed it.

The companion application filed by Renato Vardhami recounted the same incidents. Although Renato expressed the fear that his wife "might be caught, [and] perhaps raped" in the future, neither of the April 2000 applications stated that Ardiana Vardhami had actually been raped.

Renato Vardhami withdrew his application in February of 2001 in order to proceed jointly with his wife.

In December of 2000, Vardhami filed an amended application, alleging that she had been detained and raped by Albanian police officers after the September 1998 funeral demonstration. She claimed that she "caught some infection from [the] rape that made [her] ill both mentally and physically," and that she had been able "to seek medical attention" after coming to the United States. Vardhami explained her failure to disclose the rape in the previous application as follows:

> My husband is a typical Albanian man who rules his home as a patriarch and controls his wife and children. My husband also has a terrible temper. If he had found out what happened to me, I feared that he would go to the police station in order to kill the perpetrator. Before he had the opportunity to seek revenge, he himself would probably be imprisoned or killed. I also feared that he would divorce and abandon me, so that I would be left without husband and son, disgraced in my world, for something which was forced upon me.

She claimed that, since the rape, she "cannot be intimate with [her] husband." The new application also mentioned Renato's arrests in 1991 and 1998, but it differed from the April 2000 application in two significant details. First, it made no reference to Vardhami's having been beaten by the police at the 1998 demonstration. Second, Vardhami claimed in the second application to have learned about her husband's arrest through a neighbor, rather than seeing it in person, as she had claimed in the first application.

Vardhami's testimony before the IJ about the September 1998 violence was partially consistent with the second application, but inconsistent with the first. She claimed to have escaped the violence at the demonstration and to have left before her husband was arrested. When questioned about her first application, Vardhami attributed the difference to a "misunderstanding

in translating here with my attorney." She also testified that she had resumed sexual relations with her husband since the alleged rape, and that she had seen a general physician, but had not mentioned the sexually transmitted disease during her visit.

## B.    Procedural background

The IJ found that Vardhami was removable and held that she "ha[d] not satisfied her burden of proof or demonstrated by reliable and credible evidence the . . . underlying fact of her claim that she was raped by the authorities in Albania." Noting that Vardhami's testimony and applications for asylum contained significant inconsistencies, and observing that "it is uncontested that Albania is [now] a multi-party country with free and fair elections," the IJ denied asylum, withholding of removal, and protection under the Convention Against Torture.

In a per curiam opinion, the BIA affirmed the decision below, "especially [the IJ's] adverse credibility determinations regarding [Vardhami's] . . . statement in her initial asylum application that she was beaten by the police and her omission from the same application of her alleged rape." This timely appeal followed.

## II.  ANALYSIS

## A.    Standard of review

The BIA's factual determinations "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This is "a deferential standard which 'plainly does not entitle a reviewing court to reverse . . . simply because it is convinced that it would have decided the case differently.'" *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992)

(citation omitted). For that reason, "in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Id.* at 152 (emphasis in original).

**B.      Denial of asylum and withholding of removal**

> **1.      *Asylum***

An applicant for asylum "bears the burden of establishing that [s]he qualifies as a refugee 'either because [s]he has suffered actual past persecution or because [s]he has a well-founded fear of future persecution.'" *Koliada v. INS*, 259 F.3d 482, 487 (6th Cir. 2001) (quoting 8 C.F.R. § 208.13(a)-(b) (2001)). The BIA's conclusion that Vardhami failed to meet this burden was based on an "adverse credibility determination[]" stemming largely from Vardhami's "inconsistent testimony regarding her statement in her initial asylum application that she was beaten by the police and her omission from the same application of her alleged rape."

Substantial evidence supports the adverse credibility determination made by the BIA. Vardhami's two applications for asylum and her testimony before the IJ contain a number of inconsistencies "going to the heart of [Vardhami's] asylum claim." *Yu v. Ashcroft*, 364 F.3d 700, 703-04 (6th Cir. 2004) (citations and quotation marks omitted). The most glaring inconsistency is the failure in her first application for asylum to mention her purported rape after the September 1998 funeral demonstration. In her second application, Vardhami focused on the alleged rape and its consequences, saying that she had contracted an "infection" for which she was able to "seek medical attention" after arriving in the United States, and that she was unable thereafter to be intimate with her husband. Vardhami's testimony, however, casts doubt on both of these latter assertions. She

testified that she had seen a general physician in the United States, but had not mentioned the sexually transmitted disease during her visit. Furthermore, she flatly contradicted her second application by stating that she in fact had continued having sexual relations with her husband after the alleged rape.

Her first and second applications contained other inconsistencies as well. In the first application, Vardhami claimed to have been hit by the police during the September 1998 funeral demonstration and to have seen her husband's arrest. The second application makes no mention of her being hit at the demonstration and says that she learned of her husband's arrest after the fact, two inconsistencies that the BIA found material to Vardhami's credibility.

Vardhami's explanation for the inconsistencies further supports an adverse credibility determination. In her testimony, Vardhami claimed that there was a mistake in the translation, an assertion that seems implausible given her attorney's certification that "the completed application was read to the applicant in . . . her native language for verification before . . . she signed the application in my presence." As noted by the BIA, Vardhami presented no evidence indicating that her attorney's signed declaration was false.

Under the highly deferential substantial-evidence standard, we cannot reverse the BIA's determination unless "the evidence not only supports a contrary conclusion, but indeed *compels* it." *Klawitter*, 970 F.2d at 152 (emphasis in original). The numerous inconsistencies in Vardhami's applications and testimony do not support a conclusion contrary to that of the BIA, and they certainly do not compel it. We therefore affirm the BIA's decision to deny asylum.

### 2. *Withholding of removal*

In order to establish that she is eligible for withholding of removal, an applicant must show not only that she has a "well-founded fear of future persecution," *Koliada v. INS*, 259 F.3d 482, 487 (6th Cir. 2001), but that "there is a clear probability that [s]he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). This standard is significantly "more stringent" than the standard for asylum. *Koliada*, 259 F.3d at 488.

Substantial evidence supports the BIA's conclusion that Vardhami failed to show that she had a well-founded fear of future persecution. The same evidence is even less supportive of Vardhami's claim that there was an objective likelihood that she would be persecuted in the future. We therefore affirm the BIA's decision to deny withholding of removal.

### C. Denial of protection under the Convention Against Torture

To obtain relief under the Convention Against Torture, the applicant bears the burden of establishing that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The standard of review of Vardhami's Convention Against Torture claim consequently does not differ from the analysis of her request for asylum and withholding of removal. *See Castellano-Chacon v. INS*, 341 F.3d 533, 552 (6th Cir. 2003) ("This court applies the same standard of review when dealing with claims . . . pursuant to the Convention Against Torture as it does when reviewing claims under 8 U.S.C. § 1231(b)(3) [withholding of removal].") Because Vardhami failed to establish a valid claim for withholding of removal, or even a claim under the less-stringent standard for asylum, she cannot succeed with her claim under the Convention Against Torture.

**D.     Procedural issues**

*1.     Review by a single BIA member*

Whether this court has jurisdiction to review the BIA's use of its case-management system remains an open question in this circuit. *See Denko v. INS*, 351 F.3d 717, 732 (6th Cir. 2003) ("Assuming, without deciding, that judicial review properly is employed to assess whether the BIA correctly designated a case for summary affirmance . . . ."). Assuming for the sake of argument that we do have jurisdiction, however, Vardhami was not prejudiced by having her case reviewed by one judge instead of by three judges. The BIA's use of its case-management system was therefore not improper in the present case.

*2.     Failure to admit proffered documents*

 Vardhami also alleges that her right to due process was violated by the failure of the BIA to reverse the IJ's decision not to admit three documents authenticated in accordance with 8 C.F.R. § 287.6(b)(1), which requires "an official publication [of the document] . . . or . . . a copy attested by an officer so authorized." The three documents include a certificate from the District Council of Shkoder stating that Pal Pellumb Stanaj was shot by Communists in 1944, a certificate from the Albanian Ministry of Justice stating that Grigor Vardhami, who was born in 1948, was imprisoned for high treason in 1966, and a certificate indicating Renato Vardhami's membership in the Albanian Democratic Party.

Whether or not the BIA erred in affirming the IJ's decision not to admit these documents, Vardhami does not allege any prejudice to her case. Furthermore, no prejudice is evident from an examination of the documents themselves: the relevance of the first two documents is unclear and

the third document, though marginally relevant, does little to bolster Vardhami's credibility and nothing to resolve the inconsistencies in her story.

The exclusion of relevant and properly authenticated documents is error, but it is not reversible error unless prejudice resulted. *See Simko v. INS*, No. 03-3094, 2004 WL 1859588, at *3 (6th Cir. 2004) (unpublished) (holding that the failure of the alien's lawyer to elicit relevant testimony was not reversible error, and noting that "the outcome would not have changed as the remaining evidence did not indicate that [the alien] would be subjected to religious persecution if she was returned to the Ukraine"); *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003) (holding that the IJ's decision to deny counsel the opportunity to make opening and closing statements was harmless error because the alien "failed to identify any specific prejudice resulting from the IJ's denial"). Because no prejudice was alleged, and none appears to have resulted, we hold that any error in the exclusion of the documents was harmless.

### 3. *Failure to exercise discretion in Vardhami's favor*

Vardhami also asserts that the BIA erred by upholding the IJ's failure to grant her "a favorable exercise of discretion." *Cf. Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) ("Disposition of an application for asylum requires a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General.") In this case, the BIA concluded that Vardhami failed to demonstrate that she was a refugee. Because we are affirming the BIA's decision that Vardhami was not a refugee, we need not address the question of whether she was entitled to a favorable exercise of discretion.

**E.     Failure to discuss corroborative testimony and the Amnesty International report**

Vardhami further alleges that the BIA erred by failing to discuss in its opinion certain testimony indicating that her husband was arrested at the September 1998 funeral demonstration, and an Amnesty International press release expressing concern about the mistreatment of members of the Democratic Party following a protest in November of 2000. The BIA's failure to discuss the testimony about whether Renato Vardhami was detained and tortured, however, and its failure to allude to the Amnesty International press release, do not constitute reversible error because neither ultimately prejudiced Vardhami's case.

The holding of the BIA was based primarily on Renato's wife's lack of credibility with respect to events that allegedly happened to her. Discussion about whether Renato Vardhami was detained and tortured would have no bearing on explaining the inconsistencies in Vardhami's account of her own experience at the demonstration.

Likewise, although the Amnesty International press release may create doubt about the IJ's statement that, "based on the Country Reports and Asylum Profile, it is uncontested that Albania is a multi-party country with free and fair elections," it is ultimately irrelevant to the result of the case. The BIA rested its affirmance of the IJ's decision upon Vardhami's lack of credibility, and an Amnesty International press release about a demonstration in which neither of the Vardhamis claims to have participated has no bearing on this issue. Because neither the testimony in question nor the press release are material to the outcome of the case, we hold that the BIA did not commit reversible error by failing to mention them.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the BIA.