NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0518n.06
Filed: July 25, 2006

Case No. 05-3351

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ADIL FILI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ON REVIEW FROM THE** |
| | ) | **BOARD OF IMMIGRATION** |
| ALBERTO GONZALES, Attorney | ) | **APPEALS** |
| General, | ) | |
| | ) | |
| Respondent. | ) | |

BEFORE:     KENNEDY and COLE, Circuit Judges; and VARLAN, District Judge[*]

VARLAN, District Judge. Petitioner Adil Fili is a native and citizen of Albania who entered the United States on July 24, 1998, without valid entry documents. He requested relief from removal in the form of applications for asylum, withholding of removal, and protection under the U.N. Convention Against Torture. On January 25, 2000, petitioner appeared with counsel at a hearing on his applications and gave testimony. At the conclusion of the hearing, the Immigration Judge ("IJ") issued an oral decision denying the petitioner's requests for relief and protection. The IJ found petitioner's testimony regarding his claims of persecution was not credible and lacked corroborating evidence. The petitioner timely

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision without opinion, and the petitioner filed a timely petition for review of application for asylum in this court.

On appeal, the petitioner argues that the IJ's denial of his asylum claim is not supported by substantial evidence. For the reasons set forth below, we **AFFIRM** the decision of the Board of Immigration Appeals and **DENY** the petition for review.

I.

Petitioner left his native Albania on July 6, 1998, and traveled to Yugoslavia, Turkey, Cuba, and Mexico before entering the United States at Brownsville, Texas by wading across the Rio Grande River on July 24, 1998. On July 25, 1998, the Immigration and Naturalization Service ("INS")[1] issued a notice to appear against petitioner, alleging he was removable as an alien who was present in the United States without having been admitted or paroled. Petitioner appeared with counsel before an IJ and conceded removability.

As relief from removal, petitioner applied for asylum, withholding of removal, and protection under the U.N. Convention Against Torture. On January 25, 2000, petitioner appeared with counsel at two hearings on the applications. Petitioner testified and submitted several exhibits in support of his applications. The IJ's decision turned on his determination that petitioner's testimony was not credible and lacked corroboration.

---

[1]On March 1, 2003, the INS was dissolved, and its various functions were transferred to three agencies within the Department of Homeland Security ("DHS"). The Board of Immigration Appeals and the Immigration Court remain part of the Department of Justice. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. Because it appears that the agency actions in this case were taken primarily by the INS, this opinion will refer to that agency.

During his hearing and in support of his application for asylum, petitioner submitted various documents and offered his own sworn testimony. Although his wife was present and petitioner suggested she might testify on his behalf, she did not testify and no other witnesses were offered in support of petitioner's applications. The INS also submitted documents and cross-examined the petitioner, but it did not present any witnesses.

Petitioner testified that he came from a politically active family in Albania that opposed the former Communist government before it collapsed in 1991. Based on his opposition to the Communist regime, petitioner asserted that his family was labeled "the enemy of the state," leading to threats and persecution. He testified that he and his brother were detained in the 1980s. Based on his support for democratic movements in Albania, petitioner testified he became a founding member of the Democratic Party in 1990. Petitioner also testified that he was a member of the Society of the Politically Persecuted, which he also referred to as the Formerly Politically Persecuted People's Organization. Petitioner testified that he participated in these organizations by going to meetings, demonstrations, and engaging in propaganda activities.

Petitioner testified that on April 2, 1991, he and some friends led a demonstration inside the Communist Party headquarters. Petitioner testified that the crowd sought to burn the building, and the demonstration became violent when the police attempted to stop them. Petitioner testified that he protected others while they were fired upon by snipers. Despite his role in the demonstration, petitioner testified that he was detained, not arrested.

Petitioner also testified that he was arrested after leaving a Democratic Party meeting on May 30, 1991. He testified that he was taken to a police station, where he was held for approximately two days, beaten, and questioned about future Democratic Party plans. Petitioner testified that he was also arrested and questioned a number of other times in 1991, but he could not recall any other dates or times. He further testified that he believed he was arrested three times in 1991, but could not remember the dates. In addition to the incidents in April and May 1991, petitioner also testified that he was arrested, beaten, and questioned for approximately 24 hours in October 1991.

From 1992 to 1996, when the Democratic Party held power, petitioner testified that he had no problems. He became vice chief of administration at the Islamic Bank of Tirana in 1994 and remained there until a month before he left the country in 1998.

When the Socialists took power in 1997, however, petitioner testified he began having the problems that prompted him to leave Albania. Generally, he asserted that the secret police were very active under the Socialist regime, but the State Department country report for Albania stated that the secret police had reduced influence and there were no political killings once the Socialists took control of the government. More specifically, petitioner claimed that he was arrested, beaten, and threatened four or five times in 1997 and four or five times in 1998.

Although it is not specifically mentioned in his application for asylum, petitioner testified that he was arrested on July 5, 1997, and was taken to the police station, held for 20 hours, questioned about Democratic Party activities, beaten, and severely injured, sustaining

4

a broken arm. Petitioner testified he was taken to a hospital, where his arm was placed in a cast, then taken to a private clinic, where his arm was reset because the bone had been incorrectly set at the hospital. When asked, petitioner offered varying explanations for his lack of medical records corroborating his testimony, including: Albanian hospitals had lost all records; he could not afford them; and the records were destroyed. Petitioner testified that medical records did not exist in Albania, but did not explain why. Petitioner also testified that the person who treated him at the private clinic had later died.

With regard to the other three or four arrests in 1997, petitioner claimed the detentions lasted from twenty hours to two days but provided no other information. Also, with regard to the four or five arrests in 1998, petitioner only provided details of two incidents. In the first incident, during a time when petitioner was involved in a number of demonstrations, he testified he was arrested on April 10, 1998. According to petitioner, police took him to the police station and detained him for "say twenty hours, maybe, or three days." Petitioner explained his uncertainty was "[b]ecause every night[] they would capture us." In his asylum application, however, petitioner was more certain in stating that he was held for three days.

In any event, during this detention, petitioner testified that he was beaten, kicked, and hit in the face, which broke his two front teeth. Petitioner testified he was later released because "if you are detained for more than 72 hours, you automatically should be booked. I asked for an attorney to come there, but I was not provided with one. And that's why they released me." Petitioner claimed that after his release, he did not immediately get medical

treatment for his teeth, and he had them pulled later in April 1998, not long before he left Albania.

In the second incident, petitioner testified he was arrested after he left a Democratic Party meeting on May 1, 1998. Petitioner testified that two people wearing ski masks started to kick him and pointed a pistol at the back of his neck while they threatened him and his family for their political activities. Petitioner believed the assailants were communists based on their threats, and he did not report the incident to the police because he believed the police were involved in criminal activity.

With regard to the remaining two or three incidents in 1998, petitioner testified that he would be picked up, questioned, and dropped off at different locations. He testified that he was held for two days once, and the other times he was held for a shorter period of time, but he provided no additional information. Petitioner also testified that he was arrested in October or November 1998, even though he entered the United States in July of that year.

Petitioner stated that he decided to come to the United States after the May 1998 arrest. Petitioner testified that he feared returning to Albania because he believed he would be killed. He testified that his wife obtained a visa and left Albania with his children in May 1998, and petitioner left separately a month before arriving in the United States on July 24, 1998. In his application for asylum, however, petitioner states that he left for the United States on May 6, 1998, with his wife and children.

Before reaching the United States, petitioner testified that he went to Turkey, Cuba, and Mexico. Petitioner denied traveling to Belgrade, Yugoslavia, on July 7, 1998, even

6

though he earlier told an immigration official that he traveled to Belgrade, Yugoslavia, and his passport reflects his presence in Yugoslavia on July 7, 1998.

Following petitioner's testimony, the arguments of counsel, and a short recess, the IJ issued an oral decision denying petitioner's applications based on his finding that petitioner's testimony was not credible because it was inconsistent and uncorroborated. Following a timely appeal, the BIA denied petitioner's appeal without opinion. Petitioner filed a timely petition for review of the denial of his application for asylum with this court.

II.

We review administrative findings of fact, such as whether an alien qualifies for asylum, under the substantial evidence standard, and such findings are "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft,* 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Because the BIA adopted the IJ's reasoning without opinion, the court reviews the IJ's decision directly. *Singh v. Ashcroft,* 398 F.3d 396, 401 (6th Cir. 2005); *Abay v. Ashcroft,* 368 F.3d 634, 637-38 (6th Cir. 2004). The BIA's decision may not be reversed simply because the court would have decided the matter differently. *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001). In order to reverse the BIA's factual determinations, the court must find that the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Id.* (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)) (emphasis added).

Consideration of an application for asylum "requires a two-step inquiry asking: (1) whether the applicant qualifies as a 'refugee' as defined in § 1101(a)(42)(A), and (2) whether

7

the applicant merits a favorable exercise of discretion by the Attorney General." *Koliada*, 259 F.3d at 486-87; *Mikhailevitch v. INS,* 146 F.3d 384, 389 (6th Cir. 1998). The Attorney General may grant asylum to an alien who qualifies as a "refugee," that is, a person who is outside any country of such person's nationality and "who is unable or unwilling to return to . . . [that] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Pilica v. Ashcroft,* 388 F.3d 941, 950 (6th Cir. 2004) (citing 8 U.S.C. § 1101(a)(42)(A). "An applicant for asylum bears the burden of establishing that he qualifies as a refugee 'either because he has suffered actual past persecution or because he has a well-founded fear of future persecution.'" *Koliada*, 259 F.3d at 487 (quoting 8 C.F.R. § 208.13(a)-(b)).

Proof of persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch,* 146 F.3d at 390. A showing of well-founded fear of future persecution requires a demonstration by the alien:

> (1) that he has a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country; and (3) that he is unable or unwilling to return to that country because of such fear.

*Pilica,* 388 F.3d at 950. Applicants who establish that they have suffered past persecution are presumed to have a well-founded fear of future persecution, but this presumption may be rebutted by the government if it shows by a preponderance of the evidence that conditions in the country have changed so fundamentally that the applicant no longer has a well-founded

8

fear of persecution. *Id.* The applicant's testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." *Id*. (citing 8 C.F.R. § 208.13(a)). The petitioner's credibility, or lack thereof, is the key to the IJ's ruling in this case.

An IJ's adverse credibility determination is entitled to substantial deference. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). When an IJ determines that an alien's testimony lacks credibility, the IJ must include in his or her decision "specific reasons" explaining why the IJ reached such a conclusion. *Id*. Furthermore, "the IJ's 'adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency. If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'" *Singh*, 398 F.3d at 402 (quoting *Sylla*, 388 F.3d at 926).

Based on the administrative record, we find that a reasonable IJ would not be compelled to find petitioner credible. The IJ discussed a series of specific reasons he found petitioner's testimony lacked credibility. First, the IJ noted that petitioner denied traveling to Belgrade, Yugoslavia, even though his passport and statements to INS authorities indicate just the opposite. Next, the IJ notes that petitioner claimed in his asylum application that he left Albania on July 6, 1998, and arrived in the United States on July 24, 1998, but in his testimony petitioner claimed he left Albania a month before he arrived in this country, and petitioner's passport shows he actually left 18 days prior to his arrival in the United States. In addition, the IJ noted that petitioner's testimony about the conduct of the police under the Socialist government was inconsistent with the State Department country conditions report.

9

Turning more specifically to the incidents of alleged persecution recounted in petitioner's testimony, the IJ noted a number of contradictions and inconsistencies. First, with regard to petitioner's April 1998 arrest, the IJ explained that petitioner could not recall the length of his detention and other details, and petitioner's explanation that the incident was similar to many others seemed implausible since it occurred so soon before he left the country. Next, with regard to the other 1998 arrests, the IJ explained that petitioner was unusually vague about the lengths of the detentions, especially since they would have occurred shortly before he left the country. The IJ also discussed petitioner's inconsistencies in his account of his 1997 arrests and noted that petitioner gave varying accounts of the lengths of his detentions and could not give approximate dates of the arrests. With regard to petitioner's May 1991 arrest, the IJ found it curious that petitioner recalled the date and other details but could not recall how long he was detained. Finally, the IJ explained that petitioner's claim that he was arrested in October or November 1998 was not credible since he had already entered the United States by that time.

Based on petitioner's testimony, the IJ indicated that he was unsure what to believe and therefore required some corroborating evidence. However, the IJ found that petitioner was unable to provide any corroboration. Specifically, the IJ noted that petitioner offered varying and unreasonable explanations for his lack of medical records. He also noted that although petitioner's wife was present, petitioner did not offer her testimony to substantiate his claims of mistreatment. Ultimately, the IJ concluded that petitioner could not explain his failure to provide corroboration of his claims, even though there were opportunities to do so.

10

The numerous inconsistencies and contradictions discussed above go to the heart of petitioner's claim for asylum and support the IJ's conclusion that petitioner's testimony was not credible. *See Sylla*, 388 F.3d at 926. Therefore, we conclude that the evidence does not compel a reasonable fact-finder to conclude that petitioner sustained his burden of proof to establish his asylum claim. *See Koliada*, 259 F.3d at 486 (quoting *Klawitter*, 970 F.2d at 152).

III.

For the reasons discussed above, we **AFFIRM** the decision of the Board of Immigration Appeals and **DENY** the petition for review.